899 So.2d 662 (2005)
Janet Carol Tyler WAGES, Plaintiff-Appellee,
v.
Michael Alan WAGES, Defendant-Appellant.
No. 39,819-CA.
Court of Appeal of Louisiana, Second Circuit.
March 24, 2005.
*664 Charles L. Cook, Monroe, for Appellant.
Douglas L. Stokes, Jr., Jonesboro, for Appellee.
Before BROWN, CARAWAY, and PEATROSS, JJ.
BROWN, C.J.
Janet and Michael Wages' marriage ended in divorce in 1999. Their son, Jon Michael, was 11 at the time of his parents' separation and is now 16 years old. After the marriage terminated, Michael moved back to Alabama, where his parents and extended family live. Janet and Jon remained in the family home in Jonesboro.
At the initial rule to determine custody in 1999, the parties were in agreement about everything except which parent would get the first half of the Christmas holidays with Jon. Pursuant to the parties' stipulation, they would have joint custody, with Janet being designated primary domiciliary custodian and Michael having specific periods of visitation. The court accepted the parties' agreed-upon custody provisions and the stipulated matters were reduced to written judgment signed by the court on November 4, 1999. The court's ruling on the Christmas holidays issue was made on November 29, 1999, and a complete custody implementation plan approved by the court and parties was attached thereto.
Janet filed a rule to modify the custody judgment in June 2000, seeking to reduce the amount of time Jon was to spend with his father that summer. A hearing was held and the court declined to reduce Jon's time with his father, although the judge did add specific conditions to the summer visitation, such as a requirement that Jon be enrolled in day care rather than go to work with his father or grandparents and a prohibition against Michael smoking around Jon.
The mother remarried. Prior to the 2004 summer visitation with his father in Alabama, Jon wrote a letter to his mother and stepfather and left it for them in his room. In this letter, Jon expressed his desire to move to Alabama and finish high school there. Jon, who was 15 years old at this time, felt that because he had lived with his mother since age 11, it was time for him to live with his father, noting that he only had a few years before he left for college. Janet refused her son's request, and told him the only way that would happen would be if the judge ordered it. Michael filed the instant rule in August 2004, as Jon was to begin his sophomore year in high school.
Prior to the hearing, the parties' attorneys argued about the burden applicable to the rule for modification. Michael contended that the higher standard set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), was inapplicable because the original custody judgment was stipulated and the matter of primary domiciliary custody had never been litigated. Janet took the position that the subsequent judgment imposing conditions on Jon's summer visitation *665 with his father was a considered decree and that Bergeron applied to the instant rule because evidence was taken, albeit on a narrow issue, at the hearing on the rule filed by Janet in June 2000.
The trial court, observing that the purpose of Bergeron was to discourage perpetual litigation in custody matters, felt that this goal would be served by application of the rule to this case, and held Michael to the heavier burden applicable to considered decrees, i.e., he was required to show that the current situation was so detrimental to Jon that his best interests could not be served in the present circumstances.
After hearing from both parents and Jon, the trial judge ruled against Michael, noting that although she thought that Janet should give in to her son's wishes to live with his father, she was not going to change custody because Michael had not overcome the proof required by Bergeron. She did, however, increase Jon's summer visitation with his father. It is from this judgment that Michael has appealed. We reverse.

Discussion
The burden of proof upon a party seeking to modify a prior permanent custody award is dependent upon the nature of the original custody award. Custody awards are of two types. The first is a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is a considered decree, which is rendered after the trial court has received evidence of parental fitness to exercise care, custody, and control of a child. Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731; White v. Kimrey, 37,408 (La.App.2d Cir.05/14/03), 847 So.2d 157, writ not considered, 03-1943 (La.08/01/03), 849 So.2d 534; Shaffer v. Shaffer, 00-1251 (La.App. 1st Cir.09/13/00), 808 So.2d 354, writ denied, 00-2838 (La.11/13/00), 774 So.2d 151.
When the original custody decree is a stipulated judgment, the party seeking modification must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. Evans, supra; White, supra; Masters v. Masters, 33,438 (La.App.2d Cir.04/05/00), 756 So.2d 1196, writ denied, 01-3096 (La.12/07/01), 803 So.2d 975.
A party seeking to modify a considered decree of permanent custody bears a heavy burden of proving that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Evans, supra; Bergeron, supra; White, supra.
As noted above, it is the nature of the original custody award which dictates the burden of proof a party has when seeking to modify a prior permanent custody award. Ketchum v. Ketchum, 39,082 (La. App.2d Cir.09/01/04), 882 So.2d 631; Pender v. Pender, 38,649 (La.App.2d Cir.05/12/04), 890 So.2d 1.
In the instant case, we find that the trial court erred in applying Bergeron to Michael's rule for modification of custody. The original custody award, in which Janet was named primary domiciliary parent, was a stipulated judgment and no evidence of either party's parental fitness was taken. The evidence introduced at the hearing held on the rule filed by Janet in June 2000 did not go to the issue of either party's fitness to serve as the primary domiciliary parent or what we would classify as evidence of parental fitness to exercise *666 care, custody, and control of the child. See, e.g., Schubert v. Schubert, 605 So.2d 666 (La.App. 2d Cir.1992), writ denied, 609 So.2d 230 (La.1992). Janet's rule sought to limit Jon's visitation with his father for the summer of 2000, and alternatively, asked that certain conditions be imposed upon the child's time with Michael. In preparing his opposition to his ex-wife's rule to limit his summer visitation with his son, Michael obviously focused his attentions on proving that continuing the party's original custody arrangement (summers with Michael in Alabama) was in Jon's best interest, not in proving his fitness to serve as primary domiciliary parent or Janet's lack thereof. As noted above, the issue of changing primary domiciliary status and custody of Jon during the school year was not an issue at that time. After hearing the evidence prepared by Janet, the trial court declined to reduce Jon's time with his father in Alabama, although certain conditions were added. We conclude that this rule and the judgment rendered in connection therewith were insufficient to trigger the application of Bergeron to subsequent requests for modification of custody in this case. See R.J. v. M.J., 03-2676 (La.App. 1st Cir.05/14/04), 880 So.2d 20.
Therefore, Michael was required to show that there had been a material change in circumstances affecting Jon's welfare since the original custody decree and that the proposed modification was in Jon's best interest.
La. C.C. Art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interest of the child. An analysis of these factors should be made in actions to change custody as well as those to establish custody initially. La. C.C. Art. 134, comment (d); White, supra; Craft v. Craft, 35,785 (La.App.2d Cir.01/23/02), 805 So.2d 1213.[1]
Every child custody case is to be viewed on its own peculiar set of facts and relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. White, supra; Craft, supra. The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in article 134, but should decide each case on its own facts in light of those factors. Ketchum, supra; Pender, supra. Moreover, the trial court is not bound to give more weight *667 to one factor over another and, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Id.; Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/01/00), 780 So.2d 386. Each case will depend on the child's age, the parents' situations and other factors relevant to that particular custody dispute. Pender, supra; White, supra; Brazan v. Brazan, 93-2369 (La.App. 1st Cir.06/24/94), 638 So.2d 1176.
The trial court did not apply the article 134 factors in the instant case, primarily because it did not find that Michael had overcome the onerous burden set forth in Bergeron. In her brief, Janet asserts that two factors (continuity of environment and home, and school and community) favor her, one factor favors Michael (Jon's desire to live with his father), and the others are equal, and therefore it is in Jon's best interest that she remain the primary domiciliary custodial parent. Our perusal of the record leads us to the same analysis, although not the same outcome.
The record clearly reveals that both parents love their son and have done an exemplary job in raising him thus far. The record further shows what a remarkable, accomplished, and mature young man Jon is, with athletic as well as academic accomplishments and a strong desire to further his education after high school. The only factor discussed in detail by the trial court in its oral reasons for judgment was article 134(9), Jon's adamant and convincing desire to live with his father and finish his last two years of high school in Alabama. The court also noted, however, that although he loves his mother and stepfather very much and has a good relationship with them, Jon was unable to communicate to his mother his wishes to live with his father, opining that "[H]e was uneasy about speaking freely . . . in the courtroom. The Court has some notion that he's been subliminally put under pressure not to speak his mind as to what his full desires are." In a case such as this, where the parents are equally balanced vis a vis the factors set forth in article 134, the preference of a mature and grounded teenager such as Jon is certainly entitled to great weight. See Hensgens v. Hensgens, 94-1200 (La.App. 3d Cir.03/15/95), 653 So.2d 48, writ denied, 95-1488 (La.09/22/95), 660 So.2d 478; Thomas v. Thom, 408 So.2d 442 (La.App. 1st Cir. 1981), writ denied, 412 So.2d 85 (La.1982).
In light of the above, given Jon's age and demonstrated level of maturity, under the particular facts and circumstances of this case, we find that his choice to live with his father and finish school in Alabama constitutes a material change in circumstances since the original custody decree has occurred and that a change in custody would be in Jon's best interest.[2] Logistically, this will entail changes to the remainder of the custody plan, in order to provide Janet with substantial time with Jon, for which a remand to the trial court is required. Likewise, on remand the trial court can recalculate the parties' child support obligation(s).

Conclusion
For the reasons set forth above, the judgment of the trial court is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion. Costs are assessed to plaintiff-appellant, Janet Carol Tyler Wages. REVERSED and REMANDED.
NOTES
[1] The factors enumerated in article 134 are:

(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
[2] Frankly, this case does not belong in a litigious courtroom setting. The mother's failure to listen to and consider her son's desire is disconcerting.