973 So.2d 865 (2007)
Janice Caraway STROUD, Plaintiff-Appellant
v.
Gregory Eugene STROUD, Defendant-Appellee.
No. 43,003-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2007.
*866 Smith & Jacobs by Edward Charles Jacobs, Springhill, for Appellant.
Kitchens, Benton, Kitchens & Black, by Paul Edward Kitchens, Minden, for Appellee.
Before WILLIAMS, STEWART and DREW, JJ.
STEWART, J
Janice Caraway Stroud ("Janice") appeals a judgment modifying a stipulated joint custody agreement and naming her ex-husband, Gregory Eugene Stroud ("Gregory"), the domiciliary parent of the parties' son. Because the evidence does not show that a material change in circumstances occurred or that modification would be in the child's best interest, we reverse the trial court's judgment and reinstate the prior joint custody plan.

FACTS
Since the parties divorced in 2000, Janice has been the domiciliary parent of their minor son, Gregory Ryan Stroud ("Ryan"), pursuant to a stipulated joint custody agreement and subsequent modifications. The first agreement is evidenced by a joint custody implementation plan that was signed by the trial court on May 18, 2000.
On July 28, 2000, Janice filed a rule to modify Gregory's visitation after he was arrested for a DUI, which allegedly occurred while Ryan, then age five, was in *867 the vehicle with him. We note this appears to have been a third offense DUI that was amended down to a second offense charge. Pursuant to the parties' stipulations, the trial court rendered a judgment modifying Gregory's visitation privileges, prohibiting him from driving any vehicle in which the child is a passenger, and requiring that visitation be conducted in the presence of the paternal grandmother, Sherry Bagwell. Gregory lived with his mother and step-father.
On February 7, 2001, Janice filed a petition seeking sole custody of Ryan. Janice alleged that she had remarried, was joining the U.S. Army, and would likely be stationed outside of Louisiana. She also based her claim on Gregory's criminal history, which allegedly included additional arrests in November 2000, for simple battery of a police officer and possession of marijuana; he pled guilty to both. In response, Gregory filed a reconventional demand seeking temporary custody of Ryan during Janice's military training with additional visitation time thereafter. Pursuant to the parties' stipulations, the trial court rendered a judgment maintaining joint custody but granting temporary custody of Ryan to Sherry Bagwell during Janice's military training and increasing Gregory's visitation.
While in the Army, Janice lived in Texas with Ryan. After receiving an honorable discharge, she returned to Louisiana. In the latter part of 2003, both parties filed rules for contempt regarding a disagreement over visitation. Considering the parties' stipulations, the trial court rendered a judgment on January 9, 2004, continuing joint custody with Janice remaining as the domiciliary parent. The judgment specified the periods of visitation for Gregory and rescinded the requirement for supervised visitation and the prohibition against Gregory driving a vehicle with Ryan in it.
On August 11, 2006, Gregory filed a petition for change of custody. He alleged that Janice had divorced her second husband, was living with another man, and had moved with Ryan at least seven times over the years. He further alleged that Ryan now desired to live with him and attend school near Sibley. Gregory also alleged that Ryan "is terrified of the threats and coercion he would receive while with his Mother, and desires . . . that the court permit him to remain living together with his Father" pending a hearing on the requested change in custody. Gregory asked to be named primary domiciliary parent of Ryan subject to visitation by Janice. Attached to the petition was an order providing that Ryan be allowed to continue living with his father and enroll in school pending a hearing. The trial court signed this ex parte order effecting a change in the custody of Ryan on August 11, 2006.
In opposing Gregory's petition to change custody, Janice requested sole custody and again raised Gregory's history of DUI offenses and the fact that he has no residence of his own as reasons why he should not be named the domiciliary parent. She claimed that Ryan's desire to live with his father was the result of "bullying" and "constant harassment" by him. She asked the court to appoint a mental health expert to examine the parties and make a custody recommendation. Also, she alleged that the trial court had improperly granted the ex parte custody order and demanded return of Ryan to her custody as required by the agreement of January 2004. A judge signed an order restoring custody to Janice in accordance with the parties' custody agreement, but the order was rescinded due to the ongoing custody dispute having already been assigned to another division.
In the months preceding the hearing, the trial court rendered three interim orders *868 maintaining Ryan in the physical custody of his father with weekend visitations for his mother. A trial was not conducted until May 29, 2007. Thus, Ryan completed the school year while living with his father.
After hearing the testimony of Ryan, Gregory, and Janice, the trial court ruled in Gregory's favor. Although the trial judge found Janice to be a good mother who had done nothing wrong and who had provided an adequate environment for Ryan, he concluded that the La. C.C. art. 134 factors were "more or less equal" between the parents. Therefore, the trial judge gave the child's preference to live with his father significant weight. He also considered the fact that Ryan had lived with his father during the last year in "a stable, adequate environment" as grounds for granting domiciliary custody to Gregory. To address Gregory's "drinking problem," the trial judge required that he place an ignition interlock device on any vehicle he drives and that he refrain from drinking or risk losing Ryan. A judgment setting forth a joint custody implementation plan in accordance with the trial court's ruling was signed on July 24, 2007. Janice's appeal followed.

DISCUSSION
In arguing for reversal of the trial court's judgment, Janice asserts that Gregory did not carry the burden of proof necessary to modify the stipulated joint custody arrangement that had been in effect between them. She also asserts that the trial court erred in basing its decision on the child's desire to live with his father and the fact that he did so for the school year preceding the trial as a result of the court's interim orders. Finally, she argues that the trial court erred in not considering the expert report.
As in every child custody determination, the primary consideration is the best interest of the child. La. C.C. art. 131; Adams v. Adams, 39,424 (La.App.2d Cir.4/6/05), 899 So.2d 726. When, as here, the parties consent to a custodial arrangement or agree to a stipulated judgment, the party seeking modification must prove both that there has been a material change in circumstances since the original custody decree, and that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731; Adams v. Adams, supra.
The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. Factors that may be considered are set forth in Article 134, but the court is not bound to make a mechanical evaluation of each. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child. Wages v. Wages, 39,819 (La.App. 2d Cir.3/24/05), 899 So.2d 662. To begin, we will review the facts as established by the testimony.
Ryan's desire to live with his father was the only change in circumstance referred to by the trial court. Ryan, who was almost 13 at the time of trial, was asked to explain his reasons for wanting to live with his father. He referred to the friends he made at school and church, his recent baptism, his involvement in baseball, and his desire to play on the school's team. He described the home as a "nice place to live" with "a lot of room to do things." Ryan and Gregory testified that Ryan's grades and attitude about school were better since living with his father. However, the evidence showed no significant academic change and established that his grade point average was slightly higher when he lived with his mother. On cross-examination, Ryan explained that his *869 mother moved a lot when in the military but that she now stays home after having had a baby. Ryan admitted that he could attend church on weekends with his father and play sports at school where his mother lives if she regained domiciliary custody.
Gregory testified that he filed the petition to change custody after Ryan said that he wanted to stay with him. He denied bullying or coercing Ryan into this decision. They live with Gregory's mother and stepfather. Gregory said that Ryan is enjoying being a kid. He plays with friends and participates in sports and church activities. Ryan knows about his father's alcohol problems. Gregory admitted that he received more than one DUI citation. He claims that he has not wanted alcohol since Ryan has been living with him and that he will not have alcohol around Ryan. Gregory completed his probation and counseling, and he now "feels comfortable with it." However, he has not attended AA because of ball season; he claims he will get back to the meetings when ball season ends.
On cross-examination, Gregory denied that he is still drinking, and he testified that he would regain his license on July 22, 2007. Even though he lives with his mother and stepfather, Gregory asserted that he is financially able to support himself and Ryan. He admitted that Janice had never done anything to harm Ryan, that Ryan had never said anything bad about her, and that she is a good mother.
Janice testified about her moves over the years since her, divorce from Gregory. She had recently married her third husband, William Wincliff, had a baby, and is now a homemaker. Janice stated that she wants Ryan to be a part of her family and to be happy. While she would like for Ryan to have a good relationship with his father, she wants him to be safe, and she does not want him to become an alcoholic or drug abuser. She admitted that she does not communicate well with Gregory, but she claimed their relationship would be better if his mother did not interfere. Janice testified that during the year Ryan lived with Gregory, she "slacked off' on going to church due to being pregnant and giving birth, but she stated that Ryan attends church with her mother and cousins when he visits on weekends. Although she was told about Ryan's baptism, she did not attend. She also did not Attend some of his sports events due to having a newborn and living 45 miles away.
On cross-examination, she testified that she currently lives in the Springhill and Sarepta area where she grew up and where Ryan has family and friends. She stated that. Ryan could play sports at school in Springhill. She expressed the belief that Gregory still drinks and that he is unable to function on his own or raise a child. She referred to his addiction and past behavior, including multiple DUI's and one obtained while Ryan was with him, as reasons for her concern about Ryan living with Gregory.
The report of Sandi Davis, an expert appointed by the trial court, was admitted into evidence. Davis did not testify, and both parties claimed that she misinterpreted things they said to her. Her report consists of detailed reviews of sessions with Ryan, Janice, Gregory, and Sherry Bagwell, along with findings and recommendations. Davis concluded that Gregory should not be named the domiciliary parent. She cited his dependency on his mother and his history, which included a period of supervised visitation, as reasons. Davis also concluded that Sherry, not Gregory, had been Ryan's primary care-giver. She found no negativity in Janice's household or her parental ability.
*870 Janice argues that the trial court erred in not considering Davis's report. The trial judge stated that he had probably read the report before trial and that the parties believed Davis had not reached any strong conclusion. Davis was not called as a witness by either party. When Janice's counsel argued to the court that Davis presented two options for custodial arrangements but concluded that Gregory should not be designated domiciliary parent, the trial judge stated that he was an expert as well due to his years on the bench and that he did not give much credit to "these allegations that she's made in her report about she thinks this and she thinks that." After weighing and evaluating expert and lay testimony, the trial court is free to accept or reject the expert's opinion and may substitute his common sense and judgment when warranted by the record as whole. Warlick v. Warlick, 27,389 (La. App. 2d Cir.9/29/95), 661 So.2d 706; Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1340 (La. 1993). In this case, the record as a whole supports Davis's conclusion that Gregory should not be the domiciliary parent.
In his petition, Gregory alleged Ryan's desire to live with him as well as Janice's divorce, her living with another man, and her having moved seven times over the years with Ryan as grounds for modification. At the time of trial, Janice had remarried and given birth to Ryan's half-brother. While the various moves over the years, as well as Janice's new marriage and child, were changes that had occurred, they were not shown to be material changes affecting Ryan's welfare. The trial court found and the record establishes that Janice provided an adequate environment for Ryan. Therefore, the alleged changes do not justify a modification of custody.
The only change in circumstance referred to by the trial court was Ryan's preference to live with his father. We have observed that a child's preference to live with a particular parent is not by itself sufficient to justify a change in custody. Lunsford v. Lunsford, 545 So.2d 1279 (La. App. 2d Cir.1989). In Lunsford, supra, this court reversed the trial court's modification of joint custody in favor of the father upon finding that the factors underlying the children's preference to live with their father did not justify a change in custody absent a showing of inadequacy in the environment provided by the mother. The factors included the children's love and affection for their father and stepmother, as well as their father's larger home and greater financial resources.
Gregory cites Wages, supra, as support for his argument that the trial court did not err in giving significant consideration to Ryan's desire to live with his father. In Wages, supra, the child was 16 and had asked his mother for the opportunity to live with his father during his last two years before college. The mother refused the request and litigation ensued. The trial court applied the burden of proof for modification of considered decrees as set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), and concluded that the father did not overcome the burden. On appeal, this court concluded that the Bergeron burden did not apply and reversed in favor of the father under the less stringent burden of proof for stipulated judgments. The opinion makes clear that at issue was the preference of a "mature and grounded teenager," who expressed an "adamant and convincing desire" to live with his father while finishing his last two years of high school. Given that the factors of La. C.C. art. 134 were equally balanced between the parents, this court found the young man's preference to *871 be entitled to great weight under the specific facts presented.
Although Ryan has expressed the preference to live with his father, the record does not show him to be of an age or level of maturity at which his choice should be controlling, particularly considering there was no evidence that his mother provided an inadequate environment for him. At the time of trial, Ryan was still 12, but soon to turn 13. His main reasons for wanting to continue living with his father were friends, the school and church he attended, and sports. These are not the considered reasons of mature teenager who wishes to spend time with his father before leaving home for college. While friends, church, and extracurricular activities are important to a child, they are not legally sufficient to justify a change in custody in this case where other significant concerns exist and where the custodial parent has provided a suitable home for the child.
The record shows that Gregory has a troubling history of alcohol abuse and related criminal offenses. Although he testified that he has not had any alcohol since Ryan has lived with him, his testimony that he has not attended AA due to ball season and his claim that he now feels comfortable suggests that he does not take his drinking problem seriously. The trial court's judgment, which prohibits Gregory from drinking and requires the installation of an ignition interlock device, also shows some naivete with regard to Gregory's alcoholism and its potential impact on Ryan. Gregory has not been on his own since the divorce. Although he was gainfully employed at the time of trial and able to provide a home for Ryan with his parents, Gregory's living situation and history raise concerns about his ability to care for Ryan on his own. The record suggests that much of Ryan's care is provided by his grandparents.
The trial court referred to the fact that Ryan had been in a stable environment for the last year while living with his father. Janice argues that this should not have been considered by the trial court, because Gregory's custody was the result of non-prejudicial interim orders. Any relevant factor affecting the child should be considered in making a custody determination. This would include Ryan's living situation prior to trial. However, the trial court's initial rendering of the ex parte interim order on August 11, 2006, allowing Ryan to remain in his father's custody and enroll in school contrary to the parties' joint custody agreement, raises concerns about how this matter was handled.
Ex parte orders of temporary custody are authorized under La. C.C.P. art. 3945(B) only when the following requirements are satisfied:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
(2) The applicant's attorney certifies to the court, in writing, either:
(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
(b) The reasons supporting his claim that notice should not be required.
Thus, issuance of an ex parte temporary custody order requires specific and verified allegations of immediate and irreparable injury to the child. Trettin v. Trettin, 37,260 (La.App. 2d Cir.3/17/03), 839 So.2d 1272. An ex parte order that does not comply with the provisions of La. C.C.P. art. 3945 is null and void. La. C.C.P. art. 3945(E). See also Tabuchi v. Lingo 588 *872 So.2d 795 (La.App. 2d Cir.1991), stating, "It is well-settled that an ex parte custody order granted by a trial judge without notice, service of pleadings, and without affording a hearing to the parent having custody of the child is null and without effect."
The trial court's ex parte interim order of custody signed on August 11, 2006, is not in compliance with the provisions of La. C.C.P. art. 3945. There were no verified, specific facts showing that immediate and irreparable injury would result to Ryan before a hearing, nor did Gregory's attorney certify that any efforts were made to give Janice notice of the date and time the order was to be presented to the court or reasons that such notice should not be required. Thus, the trial court erred in granting the ex parte temporary custody order. The trial court's actions needlessly upset the parties' custody agreement and further disrupted Ryan's life by allowing a change in custody that was not warranted under the circumstances. Court's must abide by the appropriate procedures and laws when presiding over custody disputes in order to avoid unnecessary changes in custody and to ensure that only the best interests of the children caught in the middle are served.
We recognize that the trial court's decision in a child custody dispute is entitled to great weight and not to be disturbed on appeal unless an abuse of discretion is clearly shown. Goodwin, supra; Lunsford, supra. However, after closely reviewing the record, we find that the trial court abused its discretion in modifying the parties' stipulated joint custody arrangement without the burden of proof having been met. Gregory did not prove either a material change in circumstances since the original stipulated judgment or that the proposed modification would be in Ryan's best interest. Accordingly, we reverse the trial court's judgment and reinstate the joint custody implementation plan rendered in open court on December 9, 2003, and signed January 9, 2004, to take effect as of the date of this opinion with the parties to abide by the following Christmas visitation schedule provided in the plan:

CHRISTMAS: The Christmas holiday will be divided into two (2) periods, with Period "A" beginning at 6:00 p.m. on the date on which school is dismissed for the Christmas holiday and extending until 2:00 p.m. on December 25 and Period "B" beginning at 2:00 p.m. on December 25 and extending until 6:00 p.m. on the day before school again commences. MS. DAVIS shall have the custody of RYAN during Period "A" in the year 2003 and every odd-numbered year thereafter, with MR. STROUD having Period "B" in the year 2003 and every odd-numbered year thereafter, with the periods rotated between the parties each year thereafter.
This means that Janice will have custody of Ryan for the first part of the 2007 Christmas holiday (Period "A") and that Gregory will have Ryan for the second part of the holiday (Period "B") until 6:00 p.m. on January 6, 2008, the day before school commences. At that time, Janice will regain domiciliary custody of Ryan and the plan agreed to on December 9, 2003, will continue, in effect.

CONCLUSION
For the reasons expressed, the trial court's judgment is reversed and the parties' joint custody implementation plan is reinstated as set forth above. Costs of appeal are assessed to Gregory Eugene Stroud, appellee.
REVERSED.