JUDE G. GRAVOIS, Judge.
 

 12In this child custody and support matter, Tina Sudkamp Penn appeals a trial court judgment that awarded her shared (50/50) custody of the parties’ minor children with her ex-husband, Todd Penn. On appeal, Mrs. Penn argues that the trial court’s award of shared (50/50) custody was erroneous in various respects, including the trial court’s reliance on an incorrect legal presumption. In consequence, she asks this court for a
 
 de novo
 
 review of the record, and an award of joint legal custody with her as domiciliary parent.
 

 Mr. Penn counters that the award of shared (50/50) custody was supported by the record and should be affirmed. He also answered the appeal, arguing that the trial court erred in failing to order the production of the parties’ income and financial data, and therefore the trial court’s calculations of child support amounts were in error. He asks for recalculation of the child support amounts, or in the alternative, a remand to the trial court for introduction of additional evidence and re-determination of the child support award.
 

 |sFor the reasons that follow, we reverse the trial court’s judgment of December 10, 2008.
 

 Procedural Background
 

 The briefs and the record show that after approximately seventeen years of marriage, Mrs. Penn filed a Petition for Divorce against Mr. Penn on September 12, 2007. A Consent Judgment was rendered on December 20, 2007 (read and signed on February 13, 2008), that, among other things, awarded shared (50/50) custody on an interim basis to the parties, pending a trial on custody. Another judgment, rendered on February 14, 2008, awarded interim child support to Mrs. Penn in the amount of $617.00 per month, in addition to deciding other specific spousal and child support issues.
 

 On October 1, 2008, Mrs. Penn filed a Motion and Order to set the custody and support matters for trial for a final judgment. Following a hearing on November 21, 2008, wherein the trial court took the matters under advisement, the trial court rendered a judgment on December 10, 2008 that the parties now appeal. Pertinently, that judgment ordered Mr. Penn to pay Mrs. Penn child support in the amount of $1,067.78 per month.
 
 [1]
 
 Regarding custody, the trial court found that it was in the best interests of the children that the parties have shared (50/50) custody, and gave reasons for that decision.
 

 On appeal, Mrs. Penn argues:
 

 1) The lower court committed manifest error by failing to award legal custody as mandated by Louisiana Civil Code Article 132 and Louisiana R.S. 9:335.
 

 2) The lower court committed manifest error by refusing to interview the minor children in chambers outside the presence of their parents Land by allowing the father to personally cross-examine one of the minor children.
 

 
 *307
 
 3) The lower court committed manifest error by awarding shared 50/50 physical custody based primarily on two incorrect assumptions as follows:
 

 a) That the law says 50/50 physical custody is favored; and
 

 b) The parties must have felt 50/50 physical custody was in the best interest of the children because they agreed to it on an interim basis pending the trial; and
 

 4) The lower court committed manifest error by finding that shared 50/50 physical custody was in the children’s best interest.
 

 Analysis
 

 First of all, Mrs. Penn argues that she is entitled to a
 
 de novo
 
 review of this record, citing
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731, asserting that the trial court used the incorrect legal standard in deciding custody. This is not the case, however. The trial court’s reasons for judgment clearly show that he used the “best interest of the child” standard found in LSA-C.C. art. 131 to determine physical custody, which legal standard is currently the prevailing law.
 
 [2]
 
 Accordingly, Mrs. Penn is not entitled to
 
 de novo
 
 review of the record on the issue of child custody.
 

 Next, we address Mrs. Penn’s argument that the trial court erred by refusing to interview the minor children in chambers outside the presence of their parents and by allowing the father to personally cross-examine one of the minor children, citing
 
 Watermeier v. Watermeier,
 
 462 So.2d 1272 (La.App. 5 Cir.1985), writ denied, 464 So.2d 301 (La.1985). We find no merit to this assignment of error.
 

 | f/Fhe record shows that Mrs. Penn called the children as witnesses in her case. At the time of trial, they were 14, 12, and 11 years old. Her counsel requested that the court interview the children in chambers without either the parents or attorneys present, arguing that such a procedure was customarily done. The court expressed concern about talking to a child without either the parents or the parents’ attorneys being present, and denied Mrs. Penn’s request to interview the children in chambers. Mrs. Penn’s objection was noted for the record.
 

 In
 
 Watermeier,
 
 this court determined that
 
 a
 
 proper procedure for the handling of a child’s testimony in this type of case was for the court to interview the child in chambers, with the parents’ attorneys present (but neither parent), with a court reporter present to make a record. The court would first interview the child to establish his competency to testify, and if it so found, would further interview the child in the presence of the parties’ attorneys (but without their participation) on the record regarding the custody issues. The court made it clear that this procedure was not mandated, however, if the parties could agree to another procedure.
 

 It is not totally clear from the transcript, but it appears that what counsel for Mrs. Penn claimed was the “customary” procedure was for the court to conduct an interview with the minor children in chambers without either the parents, the attorneys, or a court reporter present, which procedure was specifically disapproved by
 
 Watermeier. Watermeier
 
 does not address whether a parent may cross-examine
 
 *308
 
 his own child on the witness stand.
 
 [3]
 

 In this case, Mrs. Penn objected to the children testifying in open court. She did not raise the issue of the children’s competency to testify, which was a ^significant issue in
 
 Watermeier.
 
 The children’s ages were 14, 12, and 11, which is significantly older that the child witness in
 
 Watermeier.
 
 Mrs. Penn was clearly concerned with the children’s ability to express their preferences in her favor rather than their competency to testify.
 

 In
 
 Fuge v. Uiterwyk,
 
 94-1815 (La.App. 4 Cir. 8/29/95), 653 So.2d 707, the court discussed the applicability of
 
 Watermeier
 
 with older child witnesses. The court found that the children, who were in high school and whose competency was not at issue, were not of such tender age as to require protection from the mere presence of their parents. Accordingly,
 
 Watermeier
 
 does not require that in all custody cases, a child be examined in chambers outside of the parents’ presence. We find that on this basis, the trial court did not err in allowing the children to testify in open court.
 

 The basis for Mrs. Penn’s argument on appeal is that her children’s testimony was not as “strong” as it might have been in chambers without either parent present. Be that as it may, the children’s preferences are only one factor of many that the court considers when determining the best interests of the children. All three children testified that they would like to live primarily with their mother, but wanted also to see their father regularly. The trial court, however, in its written reasons for judgment, appears to have mischaracterized their testimonies, stating: “The children did state that they would prefer more time with Mrs. Penn.” Their testimonies were clear that they would prefer to live primarily with her.
 

 In every child custody determination, the primary consideration is the best interest of the child. La. C.C. art. 131. Thereafter, the court should award custody in accordance with the parents’ agreement, but if they cannot agree, or if the agreement is not in the child’s best interests, the court shall award custody to the parents jointly. LSA-C.C. art. 132. LSA-R.S. 9:335(A)(2)(b) states that if feasible |7and in the best interest of the child, physical custody of the children should be shared equally.
 

 The court is to consider all relevant factors in determining the best interest of the child (LSA-C.C. art. 134) but is not bound to make a mechanical evaluation of each. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child.
 
 Stroud v. Stroud,
 
 43,003 (La.App. 2 Cir. 12/14/07), 973 So.2d 865. These factors have been construed to be nonexclusive, and the trial court has the discretion to determine the relative amount of weight to be given each factor.
 
 Mire v. Mire,
 
 98-1614, pp. 3-4 (La.App. 4 Cir. 3/24/99), 734 So.2d 751, 753.
 

 The trial court’s custody determination is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion.
 
 McKenzie v. Cuccia,
 
 04-0112, p. 3-4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338 (citing
 
 Thompson v. Thompson,
 
 532 So.2d 101 (La.1988)).
 

 
 *309
 
 When, as here, the parties previously consented to a custodial arrangement, the party seeking modification must prove both that there has been a material change in circumstances since the original custody decree, and that the proposed modification is in the best interest of the child.
 
 Stroud, supra.
 

 [4]
 

 Mrs. Penn presented evidence that Mr. Penn’s work schedule did not permit him to exercise true shared (50/50) custody, and that in fact he had exercised custody only 29.5% of the time from the consent judgment through trial. She noted that the children testified that they preferred to live primarily with her. She also expressed concern that while the children were with their father during the summer, on several occasions she felt that they were not supervised. She did not like that the fourteen-year-old daughter had to walk a mile home from school to |Rher father’s house on occasion. She complained that Mr. Penn would not buy the children things and that they came to her during his weeks to buy them things. She testified that he did not share responsibility for their extracurricular activities and doctor visits. She also noted several occasions when the children wanted to remain with her or called her from their father’s home asking that she come get them.
 

 The parties’ testimony showed that Mr. Penn did exercise shared (50/50) custody in the first three months after the consent judgment, but did not do so thereafter. Mr. Penn testified that since the Consent Judgment was entered, his work schedule at the Waterford III nuclear plant was affected by two unusual events: a fuel outage, which occurs every eighteen months, and Hurricane Gustav. Mr. Penn stated that he could have evacuated for Gustav, but agreed to work overtime on lockdown at the plant because Mrs. Penn said she could evacuate with the children.
 

 Mr. Penn explained that he worked voluntary overtime in an effort to pay his bills, which included child support. Mr. Penn acknowledged, however, that he worked a significant amount of overtime during the entirety of the parties’ marriage. Mr. Penn explained that he could have gotten help taking care of the children during these work events from his two sisters-in-law and a neighbor, but that Mrs. Penn wanted to care for the children during these times and that he agreed. He felt that he should not have this held against him, nor the fact that he got help occasionally from others, when Mrs. Penn also received help with child care from her parents on a regular basis.
 
 [5]
 
 Mr. Penn testified that his work schedule sometimes required that he use the before and after care at the children’s schools, |9and that while his daughter did occasionally walk home, other times he was able to have her picked up.
 

 Mrs. Penn presented the testimony of her parents, her brother, and a friend, who all testified that while the parties were married, Mrs. Penn was the primary caretaker of the children, while Mr. Penn was the provider. They agreed he was a hard worker and a good provider, and that both were good parents.
 

 Considering the factors in C.C. art. 134, we find that the record supports the finding that most of them are in balance
 
 *310
 
 and that both parents have demonstrated their fitness and desire to be involved with their children. We find that the trial court erred, however, in finding that shared (50/50) custody was feasible and in the children’s best interests. The evidence shows that Mr. Penn is not able to exercise shared (50/50) custody of the children on a regular basis because of his work schedule. Though he characterized the fuel outage and the hurricane as unusual events, the record shows that Mr. Penn worked a significant amount of overtime during the marriage and continued to do so after the divorce. The trial court failed to consider that prior to the divorce, Mrs. Penn was the children’s primary caregiver, in part precisely because of Mr. Penn’s work schedule. Though Mr. Penn did exercise shared (50/50) custody for three months after the Consent Judgment, this is inconsistent with his practice of working significant overtime during the entirety of the parties’ marriage and then again after the first three months following the Consent Judgment. The trial judge further erred when it stated it saw no reason why
 
 Mrs.
 
 Penn’s family could not help Mr. Penn with the children when they were with
 
 Mr.
 
 Penn. The trial court did not require such an arrangement, nor could it, but this observation implicitly recognizes that because of his work schedule, shared (50/50) custody is not feasible. Additionally, it is not | infair or reasonable to place Mrs. Penn’s parents in the position of facilitating a custody arrangement to which their daughter objects.
 

 Next, Mrs. Penn argues that the trial court failed to address the issue of
 
 legal
 
 custody, as opposed to
 
 physical
 
 custody. Mrs. Penn argues that the court’s failure to designate which parent is the domiciliary parent, and also its failure to allocate the parents’ legal authority and responsibility, as per LSA-R.S. 9:335, has prejudiced her in various ways.
 

 Our reversal of the custody determination, in naming Mrs. Penn as the domiciliary parent, makes this assignment of error partially moot. The trial court nonetheless erred by not rendering a joint custody implementation order. Courts have noted that LSA-R.S. 9:335 requires the trial court to render a joint custody implementation order, except for good cause shown, allocating the legal authority and responsibility of the parents and the time periods during which each parent shall have physical custody of the child.
 
 Duvalle v. Duvalle,
 
 27,271 (La.App. 2 Cir. 8/23/95), 660 So.2d 152. Accordingly, on remand, the trial court is hereby ordered to render a joint custody implementation order, including such things as reasonable visitation privileges for Mr. Penn.
 

 Mr. Penn’s Answer to the Appeal
 

 Mr. Penn answered the appeal, contending that the trial court erred in its calculation of his child support obligation. Specifically, he argues that the trial court erred in failing to use the statutorily required financial data, and additionally erred in failing to articulate sufficient reasons for its calculations.
 

 We must reverse the trial court’s judgment regarding child support. Given that we are hereby designating Mrs. Penn as the domiciliary parent, the child support obligation must be re-determined on that basis. Further, LSA-R.S. | n9:315.2(A) is clear in its mandate of essential documentation. That statute in pertinent part provides:
 

 Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings.... Suitable documentation of current earnings shall include but not be limited to pay stubs,
 
 *311
 
 employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party’s most recent federal tax return. A copy of the statement and documentation shall be provided to the other party.
 

 As this court stated in
 
 Inzinna v. Acosta,
 
 623 So.2d 1357 (La.App. 5 Cir.1993):
 

 Without the appropriate and required documentation this matter cannot be decided in accordance with law. The matter must be remanded for the collection of the required documentation and evidence and the proper calculation of child support in accordance with R.S. 9:315 et seq.
 
 See Mannina v. Mannina,
 
 588 So.2d 176 (La.App. 5 Cir.1991);
 
 Phillips v. Phillips,
 
 595 So.2d 732 (La.App. 5 Cir.1992). Without a verified income statement from Mrs. Inzinna, copies of the most recent tax returns of both parties, and other evidence necessary pursuant to LSA-R.S. 9:315.2 the trial court could not properly apply the guidelines of LSA-R.S. 9:315 et seq. and neither can this court.
 

 It appears that the parties’ 2007 federal tax returns were completed, as Mrs. Penn argued that Mr. Penn claimed all three children on his 2007 tax return and she was therefore unable to claim any child on hers. The parties do not explain, however, their failure to produce their most recent federal tax returns. Further, the documentation that is present in the record, particularly regarding Mr. Penn’s income, is confusing.
 
 [6]
 
 Accordingly, the child support judgment is reversed and the matter remanded for compliance with LSA-R.S. 9:315.2(A) and a hearing.
 

 112Conclusion
 

 The trial court’s judgment of December 10, 2008 is hereby reversed. We hereby grant the parties joint custody of the children with Mrs. Penn being designated as domiciliary parent. Because of this change in custody, the trial court’s award of child support is also hereby reversed. This matter is hereby remanded to the trial court for a hearing to re-determine child support and for formulation and rendering of a joint custody implementation order.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . It also ordered that Mr. Penn was solely responsible for the children's medical insurance costs and private school tuition and registration, and ordered that the parties would share the children’s uncovered medical expenses and school-related expenses, 84% to Mr. Penn and 16% to Mrs. Penn.
 

 [2]
 

 . In
 
 Evans v. Lungrin,
 
 the trial court determined custody relying on Civil Code articles that had been repealed and reenacted well before the custody proceeding. The old articles used by the court contained different presumptions and burdens of proof that were found to have interdicted the fact-finding process.
 

 [3]
 

 . On appeal, Mrs. Penn argues that the court erred in allowing Mr. Penn, who represented himself at the hearing, to cross-examine his daughter. We note, however, that Mrs. Penn did not object to the cross examination at the hearing. Therefore, this assignment of error is not preserved for appeal.
 

 [4]
 

 . This is a lesser burden of proof than a party seeking modification of a considered permanent decree. See
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La. 1986).
 

 [5]
 

 . Mrs. Penn’s parents testified at the hearing that they helped Mrs. Penn occasionally, picking up the children from school from time to time, watching them when she needed it, and that the children ate meals with them several nights a week.
 

 [6]
 

 . The record contains the following exhibits: Mrs. Penn's employer's statement of income, which includes a pay stub from November 14, 2008; costs of some of the children’s extracurricular activities; child support worksheets A and B prepared by counsel for Mrs. Penn; Mrs. Penn's affidavit of income and expenses; Mr. Penn's income summary, which includes several W-2s; Mr. Penn's income record from Entergy from January 8, 2008 through November 8, 2008; Mr. Penn's most recent paycheck (dated November 8, 2008); Mr. Penn's paycheck for 80 hours; Mr. Penn’s monthly expense sheet; Mr. Penn’s 2007 W-2; and a letter from Entergy confirming Mr. Penn’s base pay. Mr. Penn notes that while he submitted W-2s from 2001-2007, he did not submit any tax returns.