CARAWAY, J.
 

 Iiln this child custody dispute, father seeks to modify the original child custody arrangement which awarded joint custody and named the child’s mother the domiciliary parent. Because we find that the father failed to carry his heavy burden of proof imposed under
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La.1986), we affirm the decision of the trial court.
 

 Facts
 

 Kem Jones (“Kem”) and Kathy Robinson Hughes (“Kathy”) married July 13, 1996, and established their matrimonial domicile in Mansfield, Louisiana. One child, Jarred Kem Jones (“Jarred”), was born of their marriage on August 12, 1997. Kathy also had one daughter, Ja’Terriea Robinson (“Ja’Terrica”), from a previous relationship. Because Kem was present for most of Ja’Terrica’s childhood, she considers him to be her father.
 

 In May of 2004, Kem and Kathy separated, at which point Kathy and the children moved to Shreveport for a brief period of time before moving back into the family home in an attempt to reconcile the marriage. In June of 2005, after attempts at reconciliation failed, Kathy secured a job in Tallulah, Louisiana, and moved there with her children. Kathy subsequently filed a “Petition for Divorce and Determination of Incidental Matters” in the Sixth Judicial District Court in Madison Parish. In her petition, Kathy prayed that she be named the primary domiciliary parent of Jarred, subject to visitation rights in favor of Kem. Proceeding
 
 pro se,
 
 Kem filed his answer, alleging fault on the part of Kathy and citing adultery, spousal 12abuse and abandonment of the matrimonial domicile as reasons for the breakup of the marriage. He further complained that Kathy was an unfit parent and prayed for the sole legal custody of Jarred. The trial court’s minutes reflect that a trial was held on October 24, 2006, wherein testimony was heard and evidence received. Judgment was subsequently rendered granting a divorce in favor of Kathy and against Kem. The judgment also awarded joint custody to Kathy and Kem and named Kathy the domiciliary parent. Kem was granted custody every other weekend and for five weeks in the summer.
 

 On June 14, 2007, Kathy filed a motion in the trial court requesting permission to transfer Jarred from the Madison Parish School System to the Vicksburg Warren County School District. In response, Kem filed both a “Petition for Change in Custody” and a “Motion for Change in Venue.” In a judgment rendered June 24, 2008, the trial court simultaneously denied Kem’s motion to transfer venue and granted Kathy authorization to relocate Jarred to the Vicksburg school system.
 

 On December 4, 2009, Kem filed a “Rule to Modify Custody and for Contempt” seeking to establish himself as domiciliary parent. In his petition, Kem argued that circumstances had changed since the 2006 judgment of divorce. The crux of his argument was that Kathy continued to thwart Kem’s communications with Jarred and that Jarred expressed a preference to live with Kem in Mansfield.
 

 
 *1076
 
 A July 28, 2010, hearing was held in which the trial court heard testimony from both Kem and Kathy as well as from other extended family ^members. Testimony indicated that both Kem and Kathy maintain steady employment, attend church on a regular basis and spend recreational time with Jarred. Kathy has since remarried and now lives with her new husband, Roderick Hughes (“Roderick”), in Vicksburg, Mississippi. Kem remains single and lives in Mansfield, in the house where he and Kathy resided during their marriage. The court additionally conducted a one-on-one interview with Jarred, in which Jarred expressed his desire to live in Mansfield with his father.
 

 By judgment dated August 4, 2010, Kem’s request to be named the primary domiciliary parent was denied. It was further ordered that the rules and conditions governing custody and visitation contained in the 2006 Judgment of Divorce be amended to reflect:
 

 1) Summer visitation with the father shall be increased to three weeks during June, three weeks during July and two weeks during August of each year.
 

 2) The father shall provide a cell phone to Jarred and shall pay the cost of making calls by Jarred to his father, whether with a prepaid plan or otherwise so that Jarred may communicate with his father and his mother at all reasonable times.
 

 These new amendments were incorporated into the Joint Custody Implementation Plan attached to the trial court’s judgment.
 

 From this judgment denying his request to be named domiciliary parent, Kem appeals.
 

 Discussion
 

 In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest thereof. La. C.C. art. 131. Comment (d) to Article 131 states that the jurisprudential requirements |4of
 
 Bergeron v. Bergeron, supra,
 
 are applied to actions to change custody rendered in considered decrees.
 
 [1]
 
 In such actions, the judgment cannot be modified unless the party seeking the change bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification, or proves by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
 
 Bergeron v. Bergeron, supra; Pahal v. Taylor,
 
 42,698 (La.App.2d Cir.8/29/07), 965 So.2d 574.
 

 The determinations of the trial court in child custody matters are entitled to great weight; this discretion will not be disturbed on review in the absence of a clear showing of abuse.
 
 AEB v. JBE,
 
 99-2668 (La.11/30/99), 752 So.2d 756;
 
 Bergeron v. Bergeron, supra; Brown v. Mock,
 
 43,571 (La.App.2d Cir.7/16/08), 987 So.2d 892.
 

 Because the 2006 judgment naming Kathy as domiciliary parent was a considered decree, the
 
 Bergeron
 
 standard was properly applied by the trial court. Testimony regarding Kem’s concerns over the current custody arrangement was heard by the trial court. Specifically, he asserted that Kathy was attempting to sever his communication access with Jarred by taking away his phone privileges as a form of punishing the child. Kathy denied this
 
 *1077
 
 and stated in her testimony that Jarred had access to a telephone at all times if he wished to call Kem. The trial court’s ruling regarding | -,Jarred’s cell phone arrangements was an appropriate resolution of this matter.
 

 Kem additionally testified that he was concerned over Kathy and Roderick’s disciplining of Jarred. Specifically, he points to one occasion where Jarred was spanked by Roderick four times with a belt. Kathy did not deny that this occurred and moreover stated her approval for this type of punishment as a means of discipline. Kem also claimed that there was a history of physical violence between Kathy and Roderick. Kathy denied these accusations and stated that she and Roderick “fussed occasionally,” but only like any other couple. A particular incident was highlighted where a cell phone was apparently thrown at Roderick’s head, resulting in a trip to the hospital and stitches. Although this event was allegedly precipitated by a heated argument between Kathy and Roderick, both agreed that it was an accident that occurred when Kathy attempted to toss Roderick’s cell phone from one corner of the house to the other. Kem additionally accused Kathy of physically abusing him and Ja’Terrica. Kathy once again denied these allegations.
 

 Ja’Terrica testified that Jarred is afraid of their mother and that he takes on a different personality while he is around her. She believes him to be more “effervescent” and “energetic” when he is around his father. Ja’Terrica receives financial support from Kem in order to live in an off campus apartment in Ruston, Louisiana. Kathy essentially argued that Kem is buying Ja’Terrica’s loyalty and love.
 

 | (¡Testimony was generally solicited regarding Jarred’s home and school environment in both Mansfield and Vicksburg. At the time of the hearing, Jarred was twelve and attending the eighth grade at Vicksburg Intermediate School. Kathy, who is employed as a business manager for the Madison Parish School Board, maintains a work schedule that is similar to Jarred’s normal school day. Roderick testified that he interacts with his stepson on a daily basis and that he is teaching Jarred how to hunt and fish. Roderick has two children from previous relationships and has regularly scheduled visitation with each.
 

 Kem is a private investigator and testified that he typically works from 9 a.m. until 2 p.m. He testified that he and Jarred have a strong bond and that he always makes time for his son. Kem expressed his desire to enroll Jarred in Mansfield Middle School and to sign him up for various extracurricular activities, including basketball and band. Kem testified that he has family who lives in Mansfield, including his mother, his brother and sister-in-law, and various cousins. Kem felt that Jarred would be able to easily reunite with the friends he met in Mansfield before moving.
 

 The trial judge chose to speak with Jarred individually. The conversation was recorded and made part of the record. During this interview, Jarred indicated his preference to live with his father. However, it was evident that Jarred loves both parents. He stated that he was taught to be respectful in each home. Jarred suggested that he was able to confide in both parents and was able to go to either with his problems. He acknowledged that “both [parents] keep a pretty good watch on me.” Jarred vindicated that he had more friends in Mansfield and that he liked the neighborhood where his father lived. He stated that he wished to five with his dad in Mansfield because “that was my home and I grew up there.”
 

 
 *1078
 
 This court has previously observed that a child’s preference to live with a particular parent is not by itself sufficient to justify a change in custody.
 
 Stroud v. Stroud,
 
 43,008 (La.App.2d Cir.12/14/07), 973 So.2d 865;
 
 Lunsford v. Lunsford,
 
 545 So.2d 1279 (La.App. 2d Cir.1989).
 
 See also, Pahal v. Taylor, swpra.
 
 Like the child in
 
 Stroud, supra,
 
 Jarred was 12 years old at the time of the custody hearing and expressed a preference to live with the father, giving as the reasons, friends, school and sports. The court in
 
 Stroud
 
 noted, however, that “while friends, church and extracurricular activities are important to a child, they are not legally sufficient to justify a change in custody in this case ... where the custodial parent has provided a suitable home for the child.” Significantly, the ruling in
 
 Stroud
 
 did not involve the
 
 Bergeron
 
 standard.
 

 Despite the strained relationship maintained by his mother and father, Jarred appears to be a well-adjusted young man. Both households provide him financial support and spiritual guidance. Jarred is required to be respectful and taught to behave appropriately in both homes. Moreover, the trial court did not find a substantial difference in the Mansfield and Vicksburg schools.
 

 Based on the foregoing, we do not find that the sort of “deleterious circumstances” contemplated by
 
 Bergeron
 
 exist. Nor do we find that the harm likely to be caused by a change of environment is substantially |Routweighed by its advantages to Jarred. The trial court properly applied the
 
 Bergeron
 
 standard. In its reasons for judgments, the court held that the types of behavior complained of do not rise to a level warranting a change in custody. Specifically, the court considered the corporal punishment administered by Jarred’s stepfather and found it to be reasonably administered and appropriate under the circumstances. The court additionally made credibility rulings concerning the other contested matters. Considering the testimony as a whole, the court concluded:
 

 [FJrankly my assessment of the home is the home with a good mother, a good stepfather, a hard working stepfather. A mother who has required her children to work hard in school. I understand and I’m not saying that Mr. Jones didn’t have a hand in that, too, but the older child, Ja’Terrica apparently received a scholarship and did well academically. I understand that Jarred received the National Honor Society award, which is quite good. Somebody is doing a good job with the young man. He’s very respectful.
 

 [[Image here]]
 

 Jarred would prefer to live with his father most of the school year ... [t]he case law provides that the court may consider the preference of a child who has sufficient understanding to express that and sufficient maturity to essentially know what they’re talking about.
 

 * * * * * *
 

 But the court has to apply the law. The court cannot decide the cases in a vacuum. The
 
 Bergeron
 
 case is the controlling law. There has not been proof that there is a deleterious present custody.
 

 Conclusion
 

 Our review of the record conforms with the trial court’s opinion that Jarred is thriving under the current custody arrangement, and the judgment is affirmed. Costs of appeal are assessed to appellant.
 

 AFFIRMED.
 

 [1]
 

 . A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody and control of children.
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731;
 
 Oglesby v. Oglesby,
 
 25,974 (La.App.2d Cir.8/17/94), 641 So.2d 1027.