LOLLEY, J.
|! Kevin Paul Langford appeals a judgment by the Second Judicial District Court, Parish of Bienville, State of Louisiana, regarding custody and support of his minor child with Elizabeth Brooke Sims Langford, as well as the award of interim spousal support. For the following reasons, we affirm the judgment in part, reverse in part, and remand for further proceedings.
Facts
Kevin and Brooke Langford entered into a covenant marriage on April 28, 2007, and lived in Arcadia, Louisiana. The couple have one son, born on January 2, 2012. Kevin is employed as a physical therapy assistant in Jonesboro, Louisiana, and Brooke is a stay-at-home mother.
In May 2013, Kevin moved out of the matrimonial domicile (a house the couple rented from Brooke’s father) and moved to western Caddo Parish with his parents. Shortly thereafter, he filed a petition for separation from bed and board pursuant to La. R.S. 9:307(B)(6), wherein, among other claims, he desired “the parties be awarded joint legal custody of their son ... during their separation, and the' Court enter an Order of custody and visitation in the best interests of the child.”
A hearing was held on August 12, 2013, at which time the child was 19 months old. In considering the issues of custody of the minor child, child support, and interim spousal support, the trial court heard testimony from Kevin and Brooke and considered evidence regarding the parties’ financial situations. The parties stipulated that the information on Kevin’s four pay stubs submitted into evidence was correct. The trial court also had before it Brooke’s affidavit of her average monthly income and expenses, which showed she had no independent income and average monthly expenses for 12her and the child of $2,885.75. At the conclusion of the hearing, the trial court made a verbal determination, followed by a written judgment entitled Judgment of Custody (Considered Decree). In that judgment the parties were granted joint custody of their child, with Brooke being named the primary domiciliary parent. Kevin was granted the following visitation: every other weekend, from Friday at 4:00 p.m. until Sunday at 4:00 p.m., and on intermittent weeks, an additional visitation day on Wednesday, overnight from 4:00 p.m. Wednesday until Thursday morning. A location for exchange of their child was established as well. Additionally, based on Kevin’s July 2013 pay stub, the trial court projected Kevin’s annual salary to be $100,000.00, using that amount to calculate a child support obligation by Kevin in the amount of $1,117.30 a month. He was also ordered to pay Brooke interim spousal support in the amount of $800.00 per month, with a $200.00 per month credit to Kevin for payment of Brooke’s health insurance premium. The trial court’s judgment was certified to be a final judgment, and this appeal by Kevin ensued.
*104 Discussion

Allocation of Shared Custody

On appeal, Kevin raises two assignments of error related to the determination of the child’s physical custody. First, he argues that the trial court erred in failing to craft a Joint Custody Implementation Plan (“JCIP”) in accordance with La. R.S. 9:335. Second, he argues that the trial court erred in failing to formulate a plan giving Kevin, who was granted joint custody, substantially equal time with his child.
The paramount consideration in any determination of child custody is |3the best interest of the child. Sanders v. Brown, 47,893 (La.App.2d Cir. 02/27/13), 110 So.3d 1237. Custody determinations are made on a case-by-case basis. Watson v. Watson, 45,652 (La.App.2d Cir.08/11/10), 46 So.3d 218. The trial court has vast discretion in deciding matters of child custody and visitation, and an appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. Id.
In determining the child’s best interest, the trial court is to consider all relevant factors. Coleman v. Coleman, 47,080 (La.App.2d Cir.02/29/12), 87 So.3d 246. Louisiana C.C. art. 134 lists some of the relevant factors to be considered in determining the best interest of the child. The trial court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Sanders, supra; Coleman, supra. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the court. Sanders, supra. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Pender v. Pender, 38,649 (La.App.2d Cir.05/12/04), 890 So.2d 1. Each ease will depend on the children’s ages, the parents’ situations and other factors relevant to that particular custody dispute. Id.
 Joint custody determinations are governed by La. R.S. 9:335, which provides in pertinent part:
|4A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
Thus, under La. R.S. 9:335(A)(2)(b), to the extent feasible and in the best interest of the child, physical custody of the children should be shared equally. Yet, when the trial court finds that a decree of joint custody is in the best interest of the child, *105 the statute does not necessarily require an equal sharing of physical custody. Stephenson v. Stephenson, 37,323 (La.App.2d Cir.05/14/03), 847 So.2d 175; Craft v. Craft, 35,785 (La.App.2d Cir.01/23/02), 805 So.2d 1213. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Id.
The domiciliary parent is the parent with whom the child primarily resides, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both | r,parents. La. R.S. 9:335(B)(2). The implication of La. R.S. 9:335(B)(1) and (2) is that most joint custody decrees will invariably result in the child primarily residing with one parent more than the other. Nevertheless, the goal of joint custody is upheld so long as the nondomiciliary parent is assured of frequent and continuing contact with the child. Stephenson, supra.
Initially, we note Kevin’s argument that the trial court failed to enter a JCIP as required under La. R.S. 9:335. As noted, La. R.S. 9:335(A)(1) provides that in a proceeding in which joint custody is decreed, a joint custody implementation order shall be rendered, except for good cause shown. Subsection (A)(2) provides that the implementation order shall allocate the time periods during which each parent will have physical custody of the child so that the child is assured of frequent and continuing contact with both parents; physical custody should be shared equally, to the extent that it is both feasible and in the best interest of the child; and, the order should allocate the legal authority and responsibility of the parents. The statute does not require that a specific form be used for the implementation plan.
The October 2, 2013, Judgment of Custody (Considered Decree), although not entitled a “Joint Custody Implementation Plan”, named a domiciliary parent, awarded joint custody, and ordered a physical custody schedule with set days and means of exchange. It also addressed the issues of health insurance for the child and child support. The fact that it was not entitled “Joint Custody Implementation Plan” is of no consequence, because it minimally met the requirements of La. R.S. 9:335. So considering, this | ^assignment of error has no merit.
As to the actual physical custody of their child, Kevin maintains that the trial court abused its discretion, because he was not granted enough physical time with the child. Kevin initially requested having him every weekend from Friday at 4:00 to Monday morning at 9:00 a.m. Brooke had her own intractable solution, which included a complete reconciliation. In the absence of that happening, Brooke suggested Kevin have their child on Tuesday nights after work until early the next morning, and then Friday night after work until Saturday afternoon. Brooke’s position was primarily rooted in the fact that, at the time of the hearing, she was still breast feeding the child. Because the parties were unable to agree on a custody plan for their 19 month old child, they placed the trial court in the unenviable position of having to determine what was in the best interest of a very young child. The trial court’s ultimate determination, i.e., the result of alternating weekends and Wednesdays for Kevin, is on appeal as a result.
Initially, as to the trial court’s order regarding Kevin’s physical custody of their son, we note that the trial court’s judgment failed to address visitation during holidays and special family days— which will increase Kevin’s physical custo *106 dy with the child. Otherwise, the trial court’s judgment regarding the allocation of physical custody was not an abuse of discretion considering these limited facts.
Admittedly, the testimony at trial reflects that Kevin is a loving father — that is undisputed by Brooke. Further, Brooke made clear that she values the importance of the relationship between the child and Kevin, and she does not want to deprive their child of that relationship. However, the 17fact remains that their child is very young — at the time of the hearing only 19 months old. Significantly, Brooke does not work outside of the home and cares for their child at home, while Kevin works. Notably, Kevin did not present any evidence of his ability to provide child care for their child if he was granted physical custody during the week. Brooke remains living in the family home (which is owned by her father), where presumably the child has the same bedroom. At the time of the hearing, Kevin had yet to obtain his own residence and lived with his parents. Brooke’s living arrangement serves to provide great stability to the couple’s very young child. It is clear that Brooke has been the primary care giver for their child and most probably provides a sense of stability. Finally, although Kevin sought physical custody of his son every weekend, such a schedule would deprive Brooke of the ability to take the child to church, something that she placed great importance on.
The jurisprudence is clear that substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. The implication of La. R.S. 9:335 is that most joint custody decrees will invariably result in the child primarily residing with one parent more than the other. Stephenson, supra. As long as Kevin, the nondomicili-ary parent, is assured of frequent and continuing contact with his child, then the goal of joint custody has been met. Here, Kevin will see his son at least every week, assuring him of frequent, regular, and continuing contact with his child. Other than the fact that the trial court erred in failing to address the issue of holidays and important family days (such as birthdays), we conclude that the trial court’s judgment was not an abuse of |sdiscretion as to this particular case.
Furthermore, as noted, Brooke was still breast feeding the child at the time of the hearing. This was an issue of great concern to her, since the child woke every night to be fed. However, on appeal seven months has passed, and the child is over two years old. At the hearing Brooke testified that she believed the child would be weaned by the time he was two; thus we anticipate that the issue of his nursing should no longer be a consideration when the trial court reassesses the parties’ visitation schedule. At this juncture, there should be more room for overnight visitation with Kevin. Accordingly, the matter is remanded so that the trial court can set forth a firm schedule for the couple to share equally holidays and other important family days, which will result in Kevin obtaining additional time with his son.

Support Awards

Kevin also argues that the trial court erred in its determination of child and interim spousal support by judicially fixing Kevin’s annual income at $100,000.00. Using that amount, the trial court determined that Kevin’s child support would be in the amount of $1,117.30 a month and Brooke would receive interim spousal support in the amount of $800.00 per month, with a $200 per month credit to Kevin for paying Brooke’s health insurance premium.
The trial court is vested with much discretion in fixing awards of child support. The court’s reasonable determinations *107 shall not be disturbed unless there is a clear abuse of discretion. State, Dep’t of Social Services ex rel C.J.V. v. Neathery, 39,796 (La.App.2d Cir.07/29/05), 909 So.2d 40; State, ex rel. Wilson v. Wilson, 37,674 (La.App.2d Cir.09/24/03), 855 So.2d 913, writ denied, 2003-2970 (La.01/16/04), 864 So.2d 633.
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage, which shall terminate upon the rendition of a judgment of divorce. La. C.C. art. 113. The trial court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. Shirley v. Shirley, 48,635 (La.App.2d Cir.10/16/13), 127 So.3d 935.
Here, the trial court based its awards of child support and interim spousal support on an erroneous determination that Kevin had an annual salary of $100,000.00. This conclusion was based only on Kevin’s July 9, 2013, pay stub showing year-to-date income of $49,268.92. However, Kevin maintained during the trial that for various reasons his salary was not going to reach the amount he had been making in past years, and that his annual salary for 2013 should not be extrapolated from the amount on the July pay stub. In fact, Kevin’s four pay stubs introduced at trial indicated a lower earning trend by Kevin (supporting his argument), with those pay stubs reflecting the following gross amounts:
1) 06/02/13-06/15/13: $3,147.25
lm2) 06/16/13-06/29/13: $3,271.63
3) 06/30/13-07/13/13: $3,117.32
4) 07/14/13-07/27/13: $3,214.63.
When we consider all of the pay stubs entered into evidence, as of the ending date of July 27, 2013, Kevin’s year to date gross income was $55,600.87. Further, if we consider the pay stubs the trial court had before it, Kevin’s average income received for those pay periods was $3,187.71. Thus, we can estimate that at the average biweekly amount of $3,187.71, Kevin’s gross income would have been $31,877.10 for the remaining months of August, September, October, November, and December. Adding that amount to the known actual income through July 27, 2013, $55,600.87, a more accurate annual income should have been projected for Kevin of $87,477.97 — far less than the trial court’s determined income of $100,000.00.[1] Therefore, because the trial court erred in its calculation of Kevin’s annual income, the awards of child support and interim spousal support based on the inflated amount are also in error. Accordingly, that portion of the judgment making such awards is reversed and remanded for further proceedings.
Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Elizabeth *108 Brooke Sims Langford is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. All costs of |nthis appeal are to be shared equally by the parties.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. This is the amount which reasonably should have been estimated by the trial court following the consideration of evidence before it. However, the year 2013 is now history, and Kevin will obviously have actual financial information regarding his 2014 income to be used in obtaining accurate awards for child support and interim spousal support.