BROWN, C.J.
The father has appealed from a trial court judgment declining to modify a May 2013 consent judgment based upon the court's finding that the father failed to prove a material change in circumstances warranting a change in the custody arrangement set forth in the parties' consent judgment. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL BACKGROUND
The parties to this appeal are former spouses. They were married on November 25, 2004, separated on October 20, 2012, and divorced by judgment rendered December 16, 2013. The parties have three minor children. By a consent judgment entered on May 14, 2013, the parties were awarded joint custody, with the mother being named domiciliary parent and the father being given "reasonable visitation" of alternating weekends, every Thursday evening for three hours, eight hours on Father's Day, and all holidays to be agreed upon by the parties. Also in this judgment, the parties "waived the necessity of a Joint Custody Implementation Plan ('JCIP') and find same to be in the children's best interest, but reserve their right to have one set in the event that either [parent] desires same, without having to prove a change in circumstances." The mother was represented by counsel at the time of the parties' agreement, while the father appeared in proper person.
On June 24, 2015, the father filed a Petition for Rule Nisi for Entry of Shared Time Joint Custody Implementation Plan and to Modify Support, which was set for hearing on August 31, 2015.[1] At this hearing, the mother sought and was granted the appointment of an La. R.S. 9:331 mental health professional, whose report and recommendation were issued on March 28, 2016. On April 13, 2016, the mother filed a Motion for Authorization to Conduct Independent Psychiatric Evaluation of the father *549 pursuant to La. C.C.P. art. 1464. The trial court granted this request on April 28, 2016, and signed an order to that effect on May 16, 2016. The physician initially appointed, Richard Williams, was seriously injured in an accident in August 2016 and died in October 2016 before beginning the evaluation. The mother filed a Motion and Order to Substitute Psychologist Sally Thigpen on November 3, 2016, and this order was granted. Dr. Thigpen issued her 39-page report on January 30, 2017.
The trial, which consisted of ten nonconsecutive days held over the course of approximately three and one-half months, concluded on June 2, 2017. The trial court found that the father failed to prove a material change in circumstances warranting a change in the custody arrangement as set forth in the May 2013 consent judgment or that such a modification was in the best interest of the parties' children and declined to modify the consent judgment. The trial court issued its oral reasons on September 26, 2017. A written judgment and a Judgment Appointing a Parenting Coordinator were signed on October 31, 2017, the same date that the JCIP was implemented. The father has appealed.[2]
DISCUSSION
On appeal, the father has raised three assignments of error. Specifically, he argues that the trial court erred in: (1) requiring him to prove a change in circumstances in order to have a JCIP set; (2) failing to enter a JCIP that allowed the father substantial time with the children; and, (3) finding that the examination of him by Dr. Sally Thigpen pursuant to La. C.C.P. art. 1464 was an evaluation of "the parties."
The mother urges this Court to affirm the judgment of the trial court. The mother points out that: (1) the father did not seek implementation of a JCIP consistent with the agreed-upon custodial arrangement set forth in the parties' May 2013 consent judgment, but instead requested a substantial increase in his custodial time far beyond that contemplated by the parties in their May 2013 consent judgment; (2) the father failed to prove his entitlement to an equally shared custody arrangement, i.e., he failed to demonstrate that there has been a material change in circumstances since the May 2013 consent judgment warranting such an increase (or that said change was in the best interest of the children); and, (3) the trial judge weighed and evaluated the testimony and evidence of the mental health experts, and the record supports the judge's determinations regarding the weight to be given to the expert testimony in this case.
Because it is more logical to do so, we will address the third assignment of error first.
Expert Testimony
Questions of credibility and the weight to be given to expert testimony are to be resolved by the trier of fact. Lasyone v. Kansas City Southern Railroad, 00-2628 (La. 4/3/01), 786 So.2d 682; Williams v. Board of Supervisors of University of Louisiana System , 48,763 (La. App. 2d Cir. 2/26/14), 135 So.3d 804, writ denied , 14-0666 (La. 5/2/14), 138 So.3d 1249. The weight to be given to expert testimony depends on the facts on which it is based as well as the professional qualifications *550 and expertise of the expert. Meany v. Meany , 94-0251 (La. 7/5/94), 639 So.2d 229 ; Fuqua v. Fuqua , 46,118 (La. App. 2d Cir. 1/26/11), 57 So.3d 534. A fact-finder may accept or reject the opinions expressed by an expert, in whole or in part. Green v. K-Mart Corp., 03-2495 (La. 5/25/04), 874 So.2d 838 ; Davis v. Foremost Dairies, 45,835 (La. App. 2d Cir. 2/16/11), 58 So.3d 977, writs denied, 11-0568, 11-0538 (La. 4/25/11), 62 So.3d 97, 98.
The following is excerpted from the trial court's oral reasons for judgment:
The Court heard the sworn testimony and was able to make credibility determinations based upon the testimony and the Court's personal observation of the witnesses as they testified.... Based upon the testimony, the exhibits, and the Court's credibility determinations, review of the facts, the Court's insight is as follows ...
The Court first focused on the testimony of the Court-appointed expert, Dr. Mark Vigen. Dr. Vigen was appointed as the Court's expert[;] however, there was a report rendered from Dr. Vigen and Dr. Lobrano ... on March 28, 2016. Of concern to the Court was the testimony from Dr. Vigen when he ultimately acknowledged the deficiencies in the entire process of composing the report. He testified standard operation and procedure would have been for them to request the medical records for [the father]. He said, "If we had to do it over, we would have requested his medical records to review before generating the report."
Dr. Vigen and Dr. Lobrano in their testimony admitted that they reviewed the medical records of [the father] after the report had been rendered.... Dr. Lobrano testified, quote, "I wish we had done a more thorough exploration of his psychiatric history. I believe we could have done a better job with that." ...
Dr. Sally Thigpen, on the other hand, reviewed the records of three of the psychiatrists ... and the therapist Ms. Rebecca Warren. She also performed psychological testing on [the father] and reviewed depositions that had previously been taken in the case. Again, Dr. Thigpen rendered a 39-page opinion, an assessment of the parties.[3]
The Court again reviewed those medical records and opined that the doctors and therapists who provided treatment to [the father] all rendered recommendations to him on how to manage and cope with his generalized anxiety disorder. However, in those medical records there wasn't a consistent routine on who was prescribing what medication and whether [the father's] mental stability was being managed at the time in light of all that was going on in his life in terms of the divorce, the separation, his time with the children, et cetera. It was clear from evidence that was submitted that this process was having an [e]ffect on his mental stability. The fights with [the mother], the text messages, the email exchange echo the Court's assessments....
The record does not show an abuse of the trial court's discretion in this case. The trial court did not base its conclusions and findings of fact solely upon the testimony of Dr. Thigpen, but instead, as the judge specifically noted in her reasons for judgment, she took into consideration all of the evidence, including the testimony of the parties, as well as the medical records and *551 recommendations of all mental health professionals involved. This assignment of error is without merit.
Custody/Visitation
There is no merit to the father's first assigned error, which is that the trial court erred in requiring him to prove a change in circumstances to have a JCIP established.
It is undisputed that there was no JCIP at the time of the parties' consent agreement in May 2013. This, however, was done per the parties' agreement at that time. Regarding the father's periods of physical custody of the parties' children, the May 2013 consent judgment did not set any specified visitation during holidays (except for Father's Day) or summer vacations, but provided that "all holidays [were to] be agreed upon by the parties." As the record shows, the parties, having attempted for several years to fashion their own schedule for the non-specified holidays and summer months, were unable to do so without significant conflict and stress. By its terms, the May 2013 consent judgment necessarily envisioned that the father's periods of physical custody with the children would be more than the specifically provided for two nights every other weekend, three hours one night per week, and eight hours on Father's Day.
By providing that a JCIP would be set upon either party's request, which, as noted above, would contain the specified visitation periods from the May 2013 consent judgment as well as additional periods of physical custody with the father during holidays and summers, the parties did not agree to a modification of custodial time beyond these specific times "without having to prove a change in circumstances." As such, the father's request for 50/50 custody, which in fact sought a significant change from the parties' custodial agreement as set forth in the May 2013 consent judgment, was correctly treated by the trial court as a request for modification of custody, not simply a request for additional time to be set forth in a JCIP.
The primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131 ; Chandler v. Chandler , 48,891 (La. App. 2d Cir. 12/13/13), 132 So.3d 413. Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. Mulkey v. Mulkey , 12-2709 (La. 5/7/13), 118 So.3d 357 ; Chandler, supra .
In most child custody cases, the trial court's determination is based heavily on factual findings. Mulkey , 118 So.3d at 368. Child custody decisions are reviewed under the abuse of discretion standard. Leard v. Schenker, 06-1116 (La. 6/16/06), 931 So.2d 355. The determination of the trial judge in child custody matters is entitled to great weight, and her discretion will not be disturbed on review absent a clear showing of abuse. Id. The court of appeal cannot simply substitute its own findings for that of the trial court. Mulkey, supra .
When, as in the instant case, the underlying decree is a stipulated or consent judgment (i.e. no evidence of parental fitness was taken by the court), the moving party has the burden of proving that a material change in circumstances has occurred since the original custody decree was entered, and that the proposed modification is in the best interest of the child. Evans v. Lungrin , 97-541 (La. 2/6/98), 708 So.2d 731 ; McMellon v. McMellon , 49,313 (La. App. 2d Cir. 7/23/14), 161 So.3d 769.
In support of his argument that the trial court erred in failing to award him 50/50 custody of the children, the father *552 urges that the evidence at trial established the following circumstances which had changed substantially from the May 2013 consent judgment to the trial in 2017:
(1) Both parties had remarried and introduced new spouses and new minor children into the "global family dynamic."
(2) The father moved out of his mother's condominium and into a residence a few minutes away from the mother's home.
(3) The father's employment had changed with the addition of new partners which allows him the flexibility to arrange his call and vacation schedule to no longer conflict with his custodial schedule.
(4) All three children consistently express their desire to spend a lot more time with their father and want to exercise shared time in both households.
(5) The father was in a substantially better place psychologically in 2017 than he was in May 2013.
The father did not support his argument as to any of these changed circumstances with specific citations to the trial record, although in her brief, the mother did so. We will briefly address the first four, since the trial court obviously found the evidence on them to fall well short of constituting changes in circumstances that warranted consideration.
(1) It is undisputed that both parties have remarried, and that both have created blended families that include new minor children. In his concurrence in Shaffer v. Shaffer, 00-1251 (La. App. 1st Cir. 9/13/00), 808 So.2d 354, 360, writ denied, 00-2838 (La. 11/13/00), 774 So.2d 151, Justice Weimer, then serving on the First Circuit, observed that "[l]ife changes may occur, but if the changes do not have an effect on the welfare of the child, then no change in custody is justified." See, Stroud v. Stroud , 43,003 (La. App. 2d Cir. 12/14/07), 973 So.2d 865. The parents' remarriages and the creation of new family dynamics since the May 2013 consent judgment constitute a change in circumstances for everyone involved. However, the introduction of new people in one's life is not an unexpected consequence of a divorce. Montalvo v. Montalvo , 02-1303 (La. App. 3d Cir. 4/17/03), 854 So.2d 902, 908. As in Stroud, supra, there is no evidence in this case that the parties' remarriages and the creation of new "global family dynamics" have materially affected the welfare of the children.
(2) The father moved to a new house close to the mother's home. Changes in residences, like the introduction of new people, are often expected consequences of divorce. Montalvo, supra . There was no evidence introduced in this case to show that the father's relocation of his residence had a material effect on his children to support a change in the custodial arrangement set forth in the parties' consent judgment. See, Tinsley v. Tinsley , 16-0891 (La. App. 1st Cir. 1/18/17), 211 So.3d 405, 415.
(3) The father's changed work schedule. A parent's change in employment and work schedule can constitute a change that materially affects a child's welfare. See, Mulkey, 118 So.3d at 366. In the instant case, the father testified that he had more flexibility with his schedule. However, he conceded that the schedule he was working at the time of trial was similar to the schedule he worked in May 2013, when the consent judgment was rendered. The mother testified that the father has always had flexibility with his schedule, but failed to exercise his custodial times under the May 2013 consent judgment because of conflict with his call schedule. She also stated that he refused to alter his call schedule to alleviate the conflict. Dr. Lobrano *553 opined that the father "wasn't taking advantage of all the visitation that he was being offered," and was not acting consistently with someone "begging for fifty-fifty custody." This factor does not constitute a change in circumstances warranting modification of custody.
(4) All three children have expressed a desire to spend more time with their father and have shared time in both households. La. C.C. art. 134(9) provides that the reasonable preference of a child, if the court deems the child to be of sufficient age to express a preference, is a factor that may be considered by the court in determining the best interest of the child. However, such a preference is not, of itself, a material change in circumstances affecting the child's welfare. See, Stroud, supra ; Lunsford v. Lunsford , 545 So.2d 1279 (La. App. 2d Cir. 1989) ; Monteleone v. Monteleone , 591 So.2d 1228, 1235 (La. App. 4th Cir. 1991).
Drs. Lobrano and Thigpen opined that the parties' children (aged 11, 9, and 6 as of trial) were not of a sufficient age or maturity level to express a custodial preference. Dr. Lobrano also had concerns that the children were being told by the father to say or do things to be hurtful to the mother. Dr. Thigpen's review of the records and documentary evidence in this case led her to opine that the children had been coached, but not by their mother. The children did not testify at trial. Their counselor, Sandra Frith, stated that the children expressed in "words well beyond their age their desire to have a 'fifty-fifty custody' with both parents," and that the oldest child related to her that the father talked to the children about the custody proceedings. The trial court did not err in failing to factor into consideration the children's preference in this case.
(5) The father was in a "substantially better place psychologically" in 2017. In its oral reasons for judgment, the trial court found that:
In this case the record as a whole does support that both [parents] have love and affection and emotional ties to their children. Both [parents] have the capacity to give [their children] love, affection and spiritual guidance, and [are] very capable of providing for all of the children's material needs. With more work and the assistance of a parenting coordinator[,] they will both be able to consistently foster the children's relationship with the other parent and both of them will work on their parenting responsibilities.
[The father] is an intelligent man who worries and ruminates over small details. He is a loving father to all three of his children and he wants to be a great parent. However, this Court is concerned with the emotional and mental stability of [the father]. All of the treating physicians in this case recommended that [the father] would benefit from ongoing counseling. No evidence was introduced to date that [the father] has a current treatment plan to help him cope and manage his generalized anxiety disorder. Pursuant to Louisiana Civil Code Article 134(7), the mental and physical health of each parent is a factor in this case that the Court must take into account. The evidence is overwhelming and cannot be overlooked.
Given the totality of the evidence that was submitted, the Court does not feel that there was a material change in circumstance and that it warrants changing the judgment that was in place from May 14, 2013.
After considering extensive evidence and testimony, both lay and expert, introduced by the parties over the course of this ten-day trial, the judge found that the father had failed to show that there had been the *554 requisite material change in circumstances or that it was in the best interest of the children that the custodial arrangement agreed to by the parties in the May 2013 consent judgment be modified. Having reviewed the voluminous record in its entirety, we find no error or abuse of discretion on the part of the trial court.
In his next assignment of error, the father alleges that the trial court erred in failing to enter a JCIP that allowed him substantial time with the children.
Louisiana Revised Statute 9:335(A)(2)(b) provides that, to the extent feasible and in the best interest of the child, physical custody should be shared equally. Yet when the trial court finds that a decree of joint custody is in the best interest of the child, the statute does not necessarily require an equal sharing of physical custody. Yerger v. Yerger , 49,790 (La. App. 2d Cir. 2/27/15), 162 So.3d 603 ; Langford v. Langford , 49,080 (La. App. 2d Cir. 4/9/14), 138 So.3d 101 ; Chandler, supra . Substantial time rather than strict equality of time is mandated by the legislative scheme. Yerger, supra; Semmes v. Semmes , 45,006 (La. App. 2d Cir. 12/16/09), 27 So.3d 1024.
Absent the showing of good cause, the court must render a joint custody implementation order when joint custody is decreed. La. R.S. 9:335(A)(1). The implementation order shall allocate the time periods during which each parent shall have physical custody of the child is assured of frequent and continuing contact with both parents. La. R.S. 9:335(A)(2)(a) ; Yerger, supra .
The implication of La. R.S. 9:335 is that most joint custody decrees will invariably result in children primarily residing with one parent more than the other. Langford, supra; Stephenson v. Stephenson , 37,323 (La. App. 2d Cir. 5/14/03), 847 So.2d 175. In the instant case, the JCIP judgment rendered by the trial judge on October 31, 2017, will give the father approximately 80-90 "overnight" visitations, as well as 52 midweek half-day visitations.
The father's only complaint with the JCIP was that it failed to give him 50/50 shared physical custody, which we have addressed above. We observe that in this case, the trial court's JCIP meets the goal of joint custody, which is to assure that the father, who is the non-domiciliary parent, will have frequent, regular, and continuing contact with the children. Langford, supra . See also, Moreau v. Moreau , 15-0564 (La. App. 4th Cir. 11/18/15), 179 So.3d 819. This assignment of error is without merit.
CONCLUSION
For the reasons set forth above, the trial court's October 31, 2017, custody judgment and Joint Custody Implementation Plan[4] are affirmed. Costs of this appeal are assessed to defendant, Jason Carr Harrel.
AFFIRMED.

Before the trial, the parties agreed to bifurcate the matters of custody/visitation and support, as the issue of the father's entitlement to a reduction in support would be rendered moot by an adverse ruling on his request for 50/50 shared physical custody.

The trial court in its October 31, 2017, custody judgment also dismissed a Reconventional Demand filed by the mother seeking modification of the custodial arrangement to sole custody and adjudication of the father as being in contempt of court for his failure to attend court-ordered anger management classes. The mother neither appealed nor answered the father's appeal.

While the trial court makes one mistaken reference to Dr. Thigpen's assessment as having been of "the parties," a complete reading of the Court's oral reasons for judgment belies the argument urged by the father that the judge believed that Dr. Thigpen had assessed the parties rather than the father.

There was no appeal from the October 31, 2017, Judgment Appointing a Parenting Coordinator by either party, so it has become final by operation of law.