NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-517

JESSE JOHNSON

VERSUS

MARANDA CRADER

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2020-045
HONORABLE E. DAVID DESHOTELS, JR., DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of John E. Conery, Van H. Kyzar, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Devin Fontenot**
**John Green, Jr.**
**Law Offices of John Green, Jr.**
**1135 Hodges Street**
**Lake Charles, LA 70601**
**(337) 990-0060**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jesse Johnson**

**K. Ray Rush**
**102 South Tenth Street**
**Oakdale, LA 71463**
**(318) 335-2759**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Maranda Crader**

**KYZAR, Judge.**

In this child custody dispute, Plaintiff, Jesse Johnson, appeals the judgment of the trial court granting to both parties the joint custody of their minor child and designating Defendant Maranda Crader, the child's mother, as the domiciliary parent, with Defendant having custodial visitation privileges in accordance with a Joint Custody Implementation Plan. For the reasons set forth herein, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

The parties hereto are the parents of a minor child, AMJ[1], born January 22, 2017.[2] On February 5, 2020, Plaintiff filed suit seeking custody of the child, alleging that the parties had separated in November 2019, when Defendant left the home to live with another man, taking AMJ with her. He also alleged that while the parties lived together, he was the primary caretaker of the minor child handling all of the daily duties of caring for the child, while Defendant worked and attended school.

On February 14, 2020, Defendant filed an answer and reconventional demand. Therein, she admitted the past relationship between her and Plaintiff, that they were the parents of the child, AMJ, and that they no longer resided together. She further admitted to living in the home of another male but denied that Plaintiff was ever the principal caretaker of the child, as she "has always been the primary caretaker of the minor child since [the child's] birth," that she has "resided in one (1) stable household since the parties ended their relationship, has a vehicle, and income." In the reconventional demand, she claims that Plaintiff/Defendant in Reconvention

---

[1] Pursuant to Uniform Rules – Courts of Appeal, Rule 5-2, initials are used throughout to ensure the confidentiality of the minor.

[2] Paternity of the child was acknowledged by affidavit signed by both parties on January 23, 2017.

1

abuses marijuana, that he is disabled which affects his ability to care for their child, and that she is best suited to have custody of the child. She claims that Plaintiff/Defendant in Reconvention threw her out of the home they resided in when they ended their romantic relationship, and since that time, the minor child has primarily resided with her. She asserted that the parties had previously agreed upon a visitation schedule for the minor child and were each exercising visitation, but that Mr. Johnson's behavior caused her concern, such that she fears for the child's safety. She requested sole custody of the child, together with child support.

The case was tried on June 17, 2020. During the trial, each of the parties testified, as did other witnesses acquainted with the parties. It was established that Plaintiff and Defendant lived together for approximately three years, along with their child and another male acquaintance, Billie Deskin. The living conditions were less than perfect in that the two-bedroom house shared by all had holes in the floor and was ill-kept. Plaintiff had been involved in a serious car accident that left him at least partially paralyzed below the waist.[3] He did not work, while Defendant worked up to two jobs at times and attended school to be certified as a Phlebotomist. There was significant testimony concerning routine marijuana use by Plaintiff, and roommate Deskin, while the child was present in the home, but also with the knowledge of Defendant. She did not use marijuana and testified that she tested negative for drug use on two separate occasions after being served with this custody lawsuit.

Defendant moved out of the shared home and into the home of Alton Willis, an acquaintance at the time, after Billie Deskin came to her place of work, cursed at her, called her disparaging names, and told her to move out. Defendant is now

---

[3] No medical testimony was offered. such that evidence of the injuries and extent thereof came from lay testimony.

2

romantically involved with Mr. Willis, who has custody of his three children, and is employed. They live in Mr. Willis's three-bedroom home.

Plaintiff eventually also moved out of the home where he and Defendant lived with their child and is now living with another couple, to whom Plaintiff pays minimal rent. He is not employed and draws SSI benefits of $780 per month.

Following the conclusion of the trial, the court awarded the parties joint custody of the child. Defendant was designated the principal custodial parent, and Plaintiff was granted custodial visitation during the school year every other week from 4:00 P.M. on Wednesday to 5:00 P.M. the following Sunday.[4] Formal judgment was signed to this effect on July 1, 2020. Plaintiff thereafter filed this appeal. Herein, he asserts two assignments of error:

(1) The Trial Court committed reversable error in naming Appellee as the domiciliary parent of the child.

(2) The Trial Court committed legal error in its decision regarding the amount of visitation awarded to [Plaintiff].

## DISCUSSION

"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La.Civ.Code art. 131. When determining child custody by applying the best interest standard, the trial court "sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child." *C.M.J. v. L.M.C.*, 14-1119, p. 17 (La. 10/15/14), 156 So.3d 16, 28 (quoting *Turner v. Turner*, 455 So.2d 1374, 1378 (La.1984)). The child's emotional, physical, material, and social well-being and health are the court's very purpose in child custody cases; the court must

---

[4] Summer visitation was set at three consecutive days with Plaintiff followed by six with Defendant, continuing until the start of the fall school term, as well as a designated Holiday schedule, and other provisions detailed in a custody implementation plan attached to and made a part of the judgment.

3

protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. *Id.* The legislature has mandated that the court look only to the child's interests rather than those of the parties so that the court can fulfill its obligations to the child. *Id.*

Louisiana Civil Code Article 134 sets forth the factors a court is to consider in determining a child's best interest:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific

4

abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

"The wording of [La.Civ.Code] Article 134 illustrates that the court is not bound to make a mechanical evaluation of all factors listed[,]" but rather "[e]ach case should be decided on its [own] facts in light of these factors." *Breaux v. Breaux*, 96-214, p. 4 (La.App. 3 Cir. 7/17/96), 677 So.2d 1106, 1108. "The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse." *Mulkey v. Mulkey*, 12-2709, p.16 (La.5/7/13), 118 So.3d 357, 368. The court of appeal cannot substitute its own findings for that of the trial court. *Id.* Absent legal error by the trial court, appellate courts must "review the record in its entirety and (1) find that a reasonable basis does not exist for the finding, and (2) further determine that the record clearly establishes that the fact finder is clearly wrong or manifestly erroneous[]" before a trial court's factual findings and conclusions can be reversed. *Moss v. Goodger*, 12-783, p. 4 (La.App. 3 Cir. 12/12/12), 104 So.3d 807, 810. If the trial court's findings of fact are reasonable, appellate courts should not reverse them. *Id.*

Appellate courts review errors of law do novo. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731.

[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds*, 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied*, 96-3028

5

(La.9/19/97); 698 So.2d 1388.  A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993).  Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006.  When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Lasha*, 625 So.2d at 1006.

*Id.* at 735.

On appeal, Plaintiff sets out two assignments of error.  First, that the trial court erred in granting domiciliary parent status to Defendant.  Second, Plaintiff asserts that the trial court committed legal error in its decision regarding the amount of custodial visitation awarded to Plaintiff.  Finding the issues to be interrelated, we address them together.

Louisiana Revised Statutes 9:335(A) provides as follows:

(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2) (a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

. . . .

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

"In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." La.R.S. 9:335(B)(1).  The domiciliary parent has the authority to make all decisions affecting the child unless an implementation order otherwise provides. La.R.S. 9:335(B)(3).

6

In this case, the trial court specifically considered multiple factors as set forth in La.Civ.Code art. 134 in reaching its decision to grant joint custody and designate Defendant as domiciliary parent, pursuant to a set custody implementation plan. In oral reasons for judgment, the trial court set forth, in pertinent part, the following:

The Court is going to rule on the issues of custody, visitation. The Court has listened to the evidence that has been presented. Also, taking that evidence, looking at it along with the factors in Civil Code Article 134 determining the child's best interest. I just have a few comments to say or to make. You know, I have said it before and I will say it again, the parties that are here today have kind of cleaned up and are presenting to the Court a view of themselves that is probably not as accurate as the way their life truly is. Even from both - - even though neither party has for instance attempted to get a driver's license for all of these years, in the last month they both ran out to get their driver's license. I have seen photographs of Mr. Jesse Johnson, long hair, scraggly, got that grunge look. And today and yesterday he presents himself in court with a brand new suit, cleaning up presenting a better, trying to present a better image. We have Ms. Crader, you know, she is kind of guilty of that as well, trying to present to the Court a better image. But the Court looks - - puts a lot of consideration in to the way things were during the relationship and specifically after the break up, and looks at some of those things. Ordinarily - - this is kind of a unique case because ordinarily the Court would have grave problems when one of the parents or both of the parents is using drugs or in particular marijuana on such a regular basis. And that goes against Mr. Johnson's case. But, however, Maranda Crader for two or three years lived in the same house, she didn't really protest the fact that they were using marijuana on such a regular basis. And I am talking about Mr. Billie - - I want to say Gaskin, but that is not correct.

MR. GREEN:

Deskin, Judge.

THE COURT:

All right. But that has proved to me because when parties would relocate or move to a different residence, the Court believes the testimony that Billie had suggested that Maranda missed him and loved him and asked him to come back in and move in, knowing that Billie uses drugs pretty much on a daily basis. And then when they separate it is disingenuous to present an ex parte order to a court saying oh, they are using drugs at this residence, what a harmful environment for this child when she was maybe not using it but she was involved or she didn't protest at the time. So, I have to play the hand that is dealt to me and take the parents as I find them, even though it is not perfect, even

7

though the Court might have some, you know, problems with the way the parents have done these things. Dad lives a transient or kind of a commune style lifestyle, but he only gets seven hundred and eighty dollars per month SSI. You can't hardly afford to live on just that. So, I understand how sometimes you have to pool resources and friends and stuff. And it is a good thing that Mr. Johnson has such good friends. He has got - - talking about stability for this child. In some ways Mr. Johnson has more stability because of the friends that he has are childhood lifelong friends that he can count on. Ms. Crader's relationship is based romantically and those things can break up just like that. So, the Court, you know, some of these things that you would think go against Mr. Johnson, you know the Court looks at it and there is perhaps some mitigating circumstances there. However, considering the factors in 134, the Court does not feel that this is the kind of a case to justify a split fifty/fifty or co -domicile parent arrangement. As a matter of fact the higher courts frown upon these co - domicile parent arrangements and pretty much direct us district courts to try to name a domicile parent. So, when the Court looks in the factors of 134 the capacity and disposition of each party to provide with food, clothing, medical care, and so forth, that favors the mother. The mother now, in her relationship with Mr. Willis, financially she has those means and those abilities to do that. The Court does - - in Subparagraph Number 8, the Court is directed to look at the history of substance abuse from the parties. That certainly goes against Mr. Johnson. Also, the mental and physical and physical health of the parties. I certainly don't hold it against Mr. Johnson for his disability, but the Court is required to look into some of those things as far as the limitations that are concerned. And he just can't run around - - cause I have observed Mr. Johnson's limitations and they are serious. He has got a good left - - a good - - as he walks his right foot is good, I noticed. So, I feel confident that you can probably drive and use that foot to drive with. The left leg is dragging a lot, you have a hard time with that. But your disabilities are not so disabling where you should not get significant time with your child. You are smart enough and articulate enough, and I am impressed. I don't like the fact of your lifestyle is just relaxing, smoking dope all the time. And Mr. Billie's lifestyle to that affect too. But you guys are smart and articulate guys, I can hear it by the way you talk and the way you testified to, and the way you handle yourself under some pretty much intensive cross-examination. And that child - - the child certainly needs her dad. Other things, the willingness and the capacity of each party to facilitate and encourage a close relationship, mom, that goes against you. I did not like - - he is a father too. There is a co -parenting and this joint custody implementation plan does encourage both parties to communicate concerning this child. And mom does not have an automatic right to make all these determinations concerning this child. He is a parent too. Nothing in these law books says that mom has such a right to make all of those determinations. With that considered, so the Court does award joint custody with Maranda Crader as domicile parent. The visitation to Mr. Johnson, it will be as follows: before the lawyers got involved, before the pleadings got - - before things got bad,

8

there were some arrangements that were made between the parents. I like to see that. And as long as those arrangements are reasonable and nobody is getting bullied or coerced or forced to agree to something that they ordinarily wouldn't agree I have an inclination to take that - - to put a lot of weight in that. And early on after the breakup there was an agreement. And that agreement was probably dictated by Ms. Crader because she was kind of the one taking charge of this to at least briefly allow visitation five days to nine days with the nine days for Ms. Crader. I am not going to go exactly that schedule, but something fairly close to it. And what the Court will do, and the Court also takes into consideration that the parties live only a few miles apart from each other, and when this child gets to school age she will be going to Gillis, so Dad is able to bring the child to Gillis, to school. I presume that you are gonna have a house. I presume that you are scamming the Court with what is going on. You can't afford to be in that house. And I would also probably assume that you are gonna[sic] have people come live with you like you have been doing to be able to afford that. Now, is that such a horrible thing, maybe it is. But on the other hand mom took April, a 3 year old child, into the home of a man who had never met her daughter. So, for her to complain that there is a stranger or other people in the house, you know, I have some concerns about that. So, the arrangement, dad's visitation will be every other weekend area, and that will be from Wednesday at 4:00 p.m., Thursday, Friday, Saturday and Sunday, return the child at 5:00 p.m. every other week. Summers Dad has the child three days, mom has the child six days. And that is to begin when the child - - when school is not going on. But starting now, the summer, three days to dad, six days to mother. Also, the Court will order that there will be no illegal drug use or smoking of marijuana by a parent or anyone in the house while the child is with that parent. And that applies certainly to Mr. Johnson more so than Ms. Crader. The Court is going to also order, require, or permit phone access, reasonable and liberal phone access. There is typically a joint custody implementation plan. Perhaps the lawyers can put some language in there about regular and reasonable phone access while the child is with the other parent. There is the issue of child support. Under the circumstances the Court finds that Mr. Johnson earns only seven hundred and eight dollars per month. By statute the minimum amount of child support would be one hundred ($100.00) dollars per month.

Finding no manifest error in the trial court's award of joint custody or its designation of Defendant as domiciliary parent, we defer to the trial court's well-reasoned ruling. The best interest of the child standard is a fact-intensive inquiry that requires the weighing and balancing of multiple factors favoring or opposing custody in the competing parties on the basis of the evidence presented. *See* La.Civ.Code art. 134. The trial court is in the best position to ascertain the best

9

interest of the child and any findings made in furtherance of that best interest should not be disturbed on appeal absent a clear showing of abuse of discretion. *Thompson v. Thompson*, 532 So.2d 101 (La.1988). There was no such abuse of that discretion here.

Further, we find no legal error in the trial court's decision concerning the visitation/custody schedule.

> Louisiana Revised Statutes 9:335(A)(2)(b) provides that, to the extent feasible and in the best interest of the child, physical custody should be shared equally. When the trial court is faced with a decree of joint custody, such as the one in the present case, the statute does not necessarily require an equal sharing of physical custody. *Yerger v. Yerger*, 49,790 (La.App. 2 Cir. 2/27/15), 162 So.3d 603; *Langford v. Langford*, 49,080 (La.App. 2 Cir. 4/9/14), 138 So.3d 101. Substantial time rather than strict equality of time is mandated by the legislative scheme. *Yerger*, 162 So.3d 603; *Semmes v. Semmes*, 45,006 (La.App. 2 Cir. 12/16/09), 27 So.3d 1024. The allocation of the time periods during which each parent shall have physical custody of the child is required to assure of frequent and continuing contact of the children with both parents. La.R.S. 9:335(A)(2)(a); *Yerger*, 162 So.3d 603. Notwithstanding, the jurisprudence has further recognized that the implication of La.R.S. 9:335 is that most joint custody decrees will invariably result in children primarily residing with one parent more than the other. *Langford*, 138 So.3d 101; *Stephenson v. Stephenson*, 37,323 (La.App. 2 Cir. 5/14/03), 847 So.2d 175.

*Joubert v. Joubert*, 19-349, pp. 7-8 (La.App. 3 Cir. 11/13/19), 285 So.3d 7, 13-14.

The trial court correctly applied the law and the jurisprudence interpreting it. Accordingly, the judgment of the trial court fixing the custodial visitation schedule as per the Joint Custody Implementation Plan in this case is affirmed.

## DECREE

The judgement of the trial court herein is affirmed. All costs of this appeal are assessed to Appellant.

**AFFIRMED.**

10