STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**18-971**

KEITH CARRANZA

VERSUS

ANDREA C. CARRANZA

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 92,890 A
HONORABLE TONY A. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

**REVERSED IN PART AND RENDERED;**
**AFFIRMED IN PART; VACATED IN PART;**
**AND REMANDED.**

**Walter M. Sanchez**
**Tony C. Fazzio**
**The Sanchez Law Firm, L.L.C.**
**1200 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-4405**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Andrea C. Carranza**

**Terry W. Lambright**
**Lambright Law Firm**
**118 South Third Street, Suite A**
**Leesville, LA 71446**
**(337) 239-6557**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Keith Carranza**

**KYZAR, Judge.**

The mother, Andrea C. Carranza, appeals from a trial court judgment denying her request to relocate her minor children to the State of Washington. For the following reasons, we reverse in part and render, affirm in part, vacate in part, and remand for further proceedings.

## DISCUSSION OF THE RECORD

Keith Carranza and Andrea C. Carranza were married in Leesville, Vernon Parish, Louisiana on April 20, 2012. Two children were born of the marriage, Laila, born September 7, 2013, and Lilia, born September 18, 2015. Both parties are enlisted in the United States Army and were stationed at Fort Polk at the time of their marriage. At some point, their duty station was changed to Germany, where both of their children were born. They were then transferred back to Fort Polk in January 2016. The parents were divorced pursuant to an August 3, 2017 judgment of divorce.

Following an October 11, 2017 custody hearing, the trial court rendered a judgment on October 18, 2017, finding that it was in the best interests of the minor children that the parents be awarded joint custody and that the mother be designated the domiciliary parent. The trial court noted that because Ms. Carranza was to be transferred to Fort Lewis, Washington at some point before August 2018, it declined to rule on a custody plan. It stated, "That would be more appropriately dealt with closer in time to that move."[1]

On March 21, 2017, Ms. Carranza filed a petition seeking to relocate the minor children's residence from Fort Polk to Fort Lewis. Attached to her petition was a

---

[1] The original custody hearing was heard by Judge Vernon B. Clark. After the rendition of the October 18, 2017 judgment, Judge Clark retired. The judgment at issue in this appeal was rendered by Judge Tony A. Bennett.

copy of her January 27, 2018 certified letter to Mr. Carranza, notifying him of her intent to relocate the children's primary residence to Fort Lewis, effective May 11, 2018, and a copy of Mr. Carranza's February 26, 2018 objection to the relocation. Mr. Carranza filed a motion to prevent the relocation and, alternatively, a motion to change custody, with him being designated the children's domiciliary parent.

Following a May 10, 2018 hearing, the trial court rendered a written ruling on June 1, 2018, finding that Ms. Carranza's request to relocate was not made in good faith and that it was not in the best interests of the children. The trial court further held that Mr. Carranza failed to prove that a material change in circumstances warranted him being named the domiciliary parent. However, it stated that in the event that Ms. Carranza transferred to Fort Lewis, Mr. Carranza would have the legal authority to make all decisions regarding educational and medical matters pertaining to the children. The implementation plan contained in the judgment stated that the children would primarily reside with Mr. Carranza in Vernon Parish, with Ms. Carranza granted summer visitation. A written judgment was rendered in this matter on July 26, 2018. It is from this judgment that Ms. Carranza appeals.

On appeal, Ms. Carranza raises three assignments of error:

1.   The trial court incorrectly ruled that Andrea Carranza's relocation was not in good faith.

2.   The trial court erred when it failed to apply the *Bergeron* standard to its analysis of the best interest of the child factors for the relocation of the residence of the minor children.

3.   The trial court incorrectly ruled that while maintaining Andrea Carranza as the domiciliary parent of the minor children that their primary residence would be with the non-domiciliary parent, as well as, giving him decision making authority of educational and medical decisions.

2

# OPINION

The matter before us lies squarely within the juxtaposition of the burden of proof required for a change of custody and that required for relocation of the children to another state by a parent with domiciliary custody, when both parents are active-duty soldiers with the United States Army. Here, Ms. Carranza was the domiciliary parent of the minor children by virtue of an October 18, 2017 judgment, which was granted after the trial court took into consideration the fact that she was being transferred to Fort Lewis. Upon the issuance of her transfer orders, Ms. Carranza notified Mr. Carranza of her intent to relocate the children, to which he objected. He further objected to the relocation after Ms. Carranza filed her petition to relocate in the trial court. In addition to objecting to the relocation, Mr. Carranza moved for a change in custody, requesting that he be designated the domiciliary parent.

"A parent proposing relocation has the burden of proof that the proposed relocation is made in good faith and in the best interest of the child." La.R.S. 9:355.10. In determining whether relocation is in the best interest of the child, a trial court considers the following relevant factors set out in La.R.S. 9:355.14:

> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
>
> (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

3

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

In *Gathen v. Gathen*, 10-2312, pp. 9-10 (La. 5/10/11), 66 So.3d 1, 7-8 (footnotes omitted), the supreme court discussed the burden of proof and the standard of review applicable in relocation cases:

In *Curole v. Curole*, 02-1891 (La.10/15/02), 828 So.2d 1094, we first discussed the burden of proof in a relocation case. We stated that as in divorce, adoption, and termination of parental rights cases, "Louisiana's relocation statutes retain the 'best interest of the child' standard as the fundamental principle governing decisions made pursuant to its provisions." 828 So.2d at 1096. As explained, the relocation statutes govern the relocation of a child's principal residence to a location outside the state, or, if there is no court order awarding custody, more than 150 miles within the state from the other parent, or, if there is a court order awarding custody, more than 150 miles from the domicile of the primary custodian at the time the custody decree was rendered. *Id.* Pursuant to La. R.S. 9:355.13, the relocating parent has the burden of proving that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. In determining the child's best interest, the court must consider the benefits which the child will derive either directly or indirectly from an enhancement in the

4

relocating parent's general quality of life. La. R.S. 9:355.13. In *Curole*, we explained that by placing this two-part burden on the relocating parent and placing no burden on the nonrelocating parent, the legislature chose to assign a very heavy burden to the relocating parent to prove that relocation is in the best interest of the child. *Curole, supra* at 1097.

Irrespective of La.R.S. 9:355.10, a parent seeking to change the custody of a minor child bears a heavy burden of proof. "[W]hen a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed." *Bergeron v. Bergeron*, 492 So.2d 1193, 1199 (La.1986).

A trial court is granted vast discretion in deciding custody matters; therefore, its decision "will not be disturbed on appeal absent a clear showing of abuse of discretion." *Lowe v. Lowe*, 51,588, p. 12 (La.App. 2 Cir. 9/27/17), 244 So.3d 670, 678. "As long as the trial court's factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse, even though convinced it would have weighed the evidence differently if acting as the trier of fact." *Id.*

Furthermore, we note that the denial of Mr. Carranza's motion to change custody was not appealed, and thus, that issue is not before us. To find error in the denial of his motion to change custody would result in a judgment in favor of a party who has not appealed. "In reviewing the decision of a lower court at the insistence of one party, a Court of Appeal may not amend the judgment to appellant's prejudice and to the favor of a party who has sought no remedy by answering the appeal." *Texas Gas Transmission Corp. v. Hebert*, 207 So.2d 368, 372 (La.App. 3 Cir. 1967) (en banc) (on rehearing); *See* La.Code Civ.P. art. 2133.

5

When a legal error arises from the erroneous application of a law, appellate courts utilize a *de novo* standard of review on appeal. *Kevin Assocs., L.L.C. v. Crawford*, 03-211 (La. 1/30/04), 865 So.2d 34. Here, the judgment of the trial court is internally inconsistent in that the domiciliary parent, Ms. Carranza, is denied the right to move pursuant to a military transfer order, effectively requiring a change of custody, yet the trial court denied the change in custody request by the father, Mr. Carranza. It was further legal error for the trial court to make Mr. Carranza the *de facto* domiciliary parent despite finding that he failed to meet the *Bergeron* standard in regard to his change of custody motion. According to La.R.S. 9:335(B)(2) and (3), [t]he domiciliary parent is the parent with whom the child shall primarily reside," and "[t]he domiciliary parent shall have the authority to make all decisions affecting the child unless an implementation order provides otherwise."

Accordingly, we find that a *de novo* review is warranted in this matter.

## RELOCATION

In order to relocate the children, Ms. Carranza must prove that her proposed relocation from Fort Polk to Fort Lewis is made in good faith and that it is in the best interest of the children.

### *Good Faith*

The trial court found that Ms. Carranza was not in good faith in her request to relocate the children to Fort Lewis despite her having orders from the United States Army to transfer to that post. Under either standard of review, *de novo* or manifest error, we find that Ms. Carranza was not in bad faith in requesting authorization for the move to her new military post. As noted previously, the trial court was fully aware that Ms. Carranza was being transferred when it designated her the domiciliary parent in the October 18, 2017 judgment. After receiving her transfer

6

orders from the Army, Ms. Carranza advised Mr. Carranza and the trial court of her request to relocate the children, as required by law.

During the hearing on the relocation request, Ms. Carranza, who is currently ranked as a staff sergeant, testified that she has been in the Army for eight and a half years and that she intends to retire from the Army, which requires at least a twenty-year enlistment. She stated that she is a medic and is currently assigned to a combat support hospital at Fort Polk.

Ms. Carranza testified that she recently reenlisted in the Army and, as part of her reenlistment, she requested to be transferred to Fort Lewis. She stated that since she is in her second assignment with the same unit at Fort Polk, she can only further her scope of practice as a medic by transferring away from Fort Polk. She said that she chose Fort Lewis because her husband[2] is stationed there, it is located in a family friendly area, and she has family living there. She stated that the other choices available to her when she reenlisted were Korea, Fort Drum in New York, and Fort Bliss in Texas. Ms. Carranza testified that she is ordered to report to Fort Lewis by June 10, 2018. Her original order, dated September 22, 2017, ordered her to report to Fort Lewis by August 10, 2018, but that order was amended on January 8, 2018, to change her report date to June 10, 2018. She stated that she was aware of her impending transfer and that she informed both Mr. Carranza and the trial court about the transfer during the October 11, 2017 custody hearing.

Ms. Carranza denied that her request to relocate the children was done out of spite or anger against Mr. Carranza. She testified that the children love both her and Mr. Carranza and that her relocation request occurred because of her transfer by the Army. She stated that she did not request to stay at Fort Polk because it would not

_____

[2] Ms. Carranza remarried on October 8, 2017. Her husband, who is also in the military, is currently stationed at Fort Lewis.

7

be beneficial for her career. Although she was aware that the Army had a procedure whereby she could seek to remain at Fort Polk, she stated that she decided against it because of the effect on her career and because she has family at Fort Lewis.

Mr. Carranza testified that a soldier can request to be stationed at a certain location, but he agreed that such a request is not a deciding factor in the Army's final decision to relocate a soldier. He agreed that he had not alleged that Army Command conspired with Ms. Carranza in her attempt to relocate the children to Fort Lewis. Mr. Carranza testified that the Army has procedures, such as sustainment and compassionate reassignments, whereby a soldier could request to transfer or remain at a specific duty station. He stated that although the Army has a married army couples' program, he and Ms. Carranza could be assigned to different duty stations because they are no longer married. Mr. Carranza denied that a soldier's willingness to relocate affected their promotability, and he claimed that promotion is based more on a soldier's evaluation than on their duty assignments.

Based on the foregoing evidence, we find that Ms. Carranza has carried her burden of proving that her request to relocate from Fort Polk to Fort Lewis was made in good faith. There is nothing in the record indicating that Ms. Carranza and the Army conspired to have her transferred to Fort Lewis. *See Cass v. Cass*, 10-327 (La.App. 3 Cir. 11/17/10), 52 So.3d 215, *writ denied*, 11-178 (La. 2/25/11), 58 So.3d 460. Moreover, Ms. Carranza reenlisted because she intends to retire from the Army, and she sought the transfer from Fort Polk in order to advance her career as a medic in the Army. In *Nelson v. Land*, 01-1073, p. 5 (La.App. 1 Cir. 11/9/01), 818 So.2d 91, 94, the court acknowledged that a parent's relocation due to job advancement can establish good faith in a relocation request:

> In addition to requiring a relocation to be in the best interest of the child, our law requires a showing by the relocating parent that the move is being made in "good faith." La.R.S. 9:355.13. Our

8

jurisprudence has established that improved job prospects of the relocating parent *or of that parent's new spouse* is sufficient to establish good faith. In *Pittman v. Pittman*, 94-952, p. 5 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211, 1213, *writ denied*, 95-1526 (La.9/29/95), 660 So.2d 881, the court provided reasoning for holding that obtaining employment in another state constitutes a good reason for the move:

> [I]n today's society, jobs are often difficult to find. It would be unrealistic for us to hold that securing a job in another state does not establish good cause for relocation . . . . Moreover, we are not entirely comfortable with restricting a person's desire to pursue his or her career in another state.

Furthermore, Ms. Carranza's original transfer order of September 22, 2017, indicates that her assignment to Fort Lewis was based on her reenlistment. On February 2, 2018, Ms. Carranza was promoted from sergeant to staff sergeant. Thus, it can be inferred that her promotion resulted from her willingness to advance her career by reenlisting and seeking a transfer.

The fact that Ms. Carranza desired to be transferred to Fort Lewis, where her husband is stationed, is insufficient proof of bad faith, just as remarriage by a domiciliary parent, without proof of any negative material effects on the children, is not a sufficient ground, in and of itself, for a change in custody by the non-domiciliary parent. *See Bergeron*, 492 So.2d 1193.

Nor is there evidence of any other action on the part of Ms. Carranza indicating bad faith. The good faith requirement is not satisfied by "[r]elocations that are based on a frivolous reason, no reason, or just to interfere with the noncustodial parent's visitation with the children[.]" *McLain v. McLain*, 07-752, pp. 13-14 (La.App. 4 Cir. 12/12/07), 974 So.2d 726, 734 (quoting Laura C. Cocus, Comment, *Louisiana's Restrictive Relocation Laws: Jeopardizing Stability in Custodial Arrangements for the Sake of Geographical Proximity Between Divorced Parents*, 53 Loy. L. Rev. 79, 98 (Spring 2007). Likewise, it is satisfied if the relocation is based on a non-frivolous or legitimate reason or if is not intended to

9

interfere with the noncustodial parent's visitation. *Johnson v. Johnson*, 99-1933 (La.App. 3 Cir. 4/19/00), 759 So.2d 257, *writ denied*, 00-1425 (La. 5/31/00), 762 So.2d 635. Accordingly, we find that Ms. Carranza's request to relocate the children to Fort Lewis was based on a legitimate reason because of her transfer by the Army and that her request was made in good faith.

## Best Interest of the Child

The second prong of La.R.S. 9:355.10 requires Ms. Carranza to prove that the relocation is in her children's best interest. As previously stated, La.R.S. 9:355.14 sets out the twelve factors to be considered in determining whether this element is satisfied. Thus, we will address each factor in turn.

*(1)*    *The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.*

The evidence shows that both parents have enjoyed a loving and caring relationship with their children and that both admit that the children love the other parent unconditionally. The children were born during the Carranzas' three-year and three-month deployment to Germany. Laila was two years and four months old and Lilia was four months old when the Carranzas returned to Fort Polk in January 2016. Ms. Carranza testified that she did the child rearing while they lived in Germany. The record shows that the children remained with Mr. Carranza in the matrimonial domicile after the parties separated on April 18, 2016.

Following the first custody hearing, the trial court determined that Ms. Carranza provided much of the routine care for the children during the parties' marriage. However, it noted that during Ms. Carranza's eight-month deployment, Mr. Carranza necessarily became the children's caregiver. In recognition of Ms. Carranza's daily involvement with the children, the trial court granted her

10

domiciliary parent status. It further granted joint custody of the children to Ms. Carranza and Mr. Carranza, with physical custody shared on a weekly basis.

The trial court further noted that neither party had family in the Vernon Parish area, which could provide the children with a family support system. Although Mr. Carranza indicated that he has a son from a previous relationship, there was no evidence in the record regarding the type of relationship that existed between the children and their half-brother.

Based on the evidence, we find that this factor favors relocation.

*(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.*

At the time of the relocation hearing, Laila was four years and five months old and Lilia was two years and five months old. Laila was enrolled in a pre-kindergarten 3 program at an elementary school located on base at Fort Polk. She was two years away from kindergarten. Lilia was in daycare. According to Mr. Carranza, the children have had four different daycare providers and were about to start with their fifth provider immediately following the hearing. The reason being that the individuals providing the daycare either quit or underwent a permanent change of station. Despite these changes, Mr. Carranza admitted that the children have adapted and thrived.

Mr. Carranza claimed that it would be a challenge for Laila to relocate to Fort Lewis. He explained that although excited about starting school, she initially had a hard time at school, which required both him and Ms. Carranza to take her to school. He stated that she is now in a routine and that she has friends at school, whom she talks about every day. He said that she also talks about her teachers. Mr. Carranza testified that Laila has benefited from school because she learns something new everyday. However, he admitted that every military family is subject to deployment

11

and that Laila could lose her school friends if their military parents transfer from Fort Polk.

Mr. Carranza also claimed that Laila's grades suffered when she was in Ms. Carranza's custody. He explained that Laila receives a daily letter grade at school, which depends on how she acts throughout the day. He stated that Laila's grades dropped from an A to a B when she was with Ms. Carranza, on one occasion because she was fighting in school. However, Mr. Carranza presented no documentary evidence in support of his claim.

Ms. Carranza agreed that the children have primarily known Vernon Parish as their home. However, she stated that the realty of being in a military family is that they will move when their parents transfer, and they will also lose friends when their friends' parents transfer. She described Laila as a social butterfly, who makes friends all the time. She acknowledged that Laila talks about her teachers; however, she pointed out that Laila has only known these teachers for three months and that her teachers will change every year. She further stated that she has also known Laila to receive less than an A grade during the Mr. Carranza's week of custody.

Based on the age of the children and the fact that neither child has begun formal schooling, we find that this factor favors relocation.

*(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.*

Ms. Carranza indicated that she will encourage frequent communication by FaceTime between the children and Mr. Carranza such as after school and before bedtime. Based on the two-hour time difference between Fort Polk and Fort Lewis, she stated that communication between the children and Mr. Carranza will be easier than when she was deployed to Afghanistan and Kuwait. She further stated that she

12

maintained regular communication with the children through FaceTime while she was deployed. Ms. Carranza also proposed that she will allow Mr. Carranza a large portion of the summer vacation and additional holidays for visitation. She said that she and Mr. Carranza also discussed splitting the travel expenses for the children equally, although the parent traveling with the children will have to pay their own way.

Mr. Carranza claimed that the children's relocation will make it difficult, physically and financially, for him to maintain a close relationship with them. While he agreed that Ms. Carranza will experience the same difficulties if the relocation request is denied, he stated that his impact will be greater because he also has to maintain a relationship between the children and his son from a former relationship.[3] However, he admitted that because he and Ms. Carranza are no longer married, the Army can assign them to different duty stations and that both he and Ms. Carranza were aware of this possibility when they divorced.

Although the relocation will present Mr. Carranza with both physical and financial difficulties in maintaining his relationship with the children, we find that this factor favors neither parent. While communication via social media and other means may not be a substitute for face-to-face contact, it does provide a parent with the means of maintaining instantaneous visual contact with the child. Given Ms. Carranza's acknowledgement of the children's relationship with their father and the trial court's recognition that both parties are well-meaning, loving parents, we find no reason to believe that communication between either parent and the children will not be encouraged. Furthermore, this is not a situation where the relocating parent

---

[3] According to the Appendix 23.0B Family Law Affidavit submitted by him in conjunction with his petition for divorce, Mr. Carranza indicated that his contact with his son, who was twelve years old at the time the affidavit was completed, was mainly during the summer unless the mother refused to allow the visitation. He further indicated, in the affidavit, that he was paying child support in the amount of $600.00 per month.

13

has a choice in whether to remain in the present location. Here, Ms. Carranza has been ordered by the Army to report to Fort Lewis; thus, she has no choice but to relocate, and in fact, has already done so.

*(4)   The child's views about the proposed relocation, taking into consideration the age and maturity of the child.*

This factor is not an issue in this case as the children are too young to express a view regarding the proposed relocation.

*(5)   Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.*

The only evidence on this issue was Mr. Carranza's allegation regarding his difficulty in communicating with the children while Ms. Carranza was on leave the previous Christmas. He claimed that he had difficulty gaining telephone access to the children during that three-week period, and he was only able to speak to them five or six times. However, we find this allegation insufficient to prove an established pattern of conduct. Thus, we find that this factor favors neither parent.

*(6)   How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.*

We find that there is sufficient evidence in the record to support a finding that the relocation to Fort Lewis will enhance the children's quality of life. The children will have the benefit of a family support system through Ms. Carranza's husband and her cousin, which they do not have at Fort Polk. They will be living off post and ten minutes from their cousin and her husband, who is in the military, and their two young sons. Despite the fact that the children have never lived with Ms. Carranza's husband or met their cousins, "the introduction of new people in one's life is not an unexpected consequence of a divorce." *Harrel v. Harrel*, 52,248, p. 8 (La.App. 2 Cir. 6/27/18), 251 So.3d 546, 552. Moreover, Mr. Carranza has not

14

alleged any misconduct on the part Ms. Carranza's husband, other than to claim that Laila learned a curse word from him. Ms. Carranza's testimony further indicates that the area around Fort Lewis offers many outdoor activities, such visiting parks, boating, and hiking and that there is a petting zoo located near their home.

Ms. Carranza testified that her children's education is very important to her and, according to her research, Washington ranks sixth in the nation in education, whereas Louisiana ranks fiftieth. She admitted that she has not researched the Vernon Parish School District's ranking because the reality of her children remaining in Vernon Parish is minimal due to the fact that both she and Mr. Carranza are in the military. Although Mr. Carranza claimed that the Vernon Parish School District ranks higher than the Bethel School District in Washington, Ms. Carranza testified that the school the children will be attending is in the Clover School District.

Ms. Carranza's admitted that she will be in a deployable unit at Fort Lewis. However, according to her testimony, every soldier is deployable if the Army needs their services. Furthermore, she testified that the children will return to Mr. Carranza if she is deployed, rather than stay with her husband. Although Mr. Carranza said that he has no intention of leaving Fort Polk, he previously admitted that every military family is subject to redeployment. He further agreed that if the Army decided to transfer him, he would have to leave Fort Polk.

We find that this factor favors relocation.

*(7)    The reasons of each person for seeking or opposing the relocation.*

As previously stated, we have found that Ms. Carranza was in good faith in requesting the relocation because she was ordered to transfer to Fort Lewis by the Army.

Mr. Carranza opposed the relocation on numerous grounds. He alleged that it will make a continuing relationship between him and the children more difficult

15

and that it will financially affect his ability to see the children; it will have a significant and disruptive impact on the children's education; that Ms. Carranza has not alleged that the proposed relocation will financially benefit her or the children or that it will enhance the children's quality of life; that he believed that the children preferred to live with him; that the children have become significantly attached to him after Ms. Carranza left the marital home in April 2016; that Ms. Carranza has not demonstrated that the proposed relocation will emotionally benefit the children; that Laila's grades drop when she is in Ms. Carranza's custody and that she constantly asks for her friends when at home; that Ms. Carranza will not encourage a close and continuing relationship between him and the children; that he is concerned about the welfare of the children because Ms. Carranza complains that she is constantly tired and exhausted; that the children will miss his family, emotional, and academic support if they relocate; that Ms. Carranza has recently remarried and that she has requested a transfer to a deployable unit; that he has fulfilled all of his financial obligations; that he is unable to transfer to Fort Lewis because of his military obligations at Fort Polk; and that he is concerned about the welfare of the children because Ms. Carranza sounded incoherent during a telephone call on March 31, 2017. However, despite Mr. Carranza's bare assertions, there is no evidence that the transfer to Fort Lewis will have a negative material effect on the children.

Based on our findings regarding each factor, as discussed elsewhere, we find that this factor favors relocation.

*(8)    The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.*

As noted by the prior custody judgment, both parties make approximately the same income. Mr. Carranza testified that other than the housing allowance, his and

16

Ms. Carranza's income would be comparable. While this may be true, Ms. Carranza will presumably benefit from a reduction in her expenses due to her remarriage, which benefit will accrue to the children if they relocate to Fort Lewis. Mr. Carranza, however, is liable for child support for his child from a previous relationship. Thus, we find that this factor favors relocation.

*(9)* *The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including the child support, spousal support, and community property, and alimentary obligations.*

This factor is not applicable in this case.

*(10)* *The feasibility of a relocation by the objecting person.*

The relocation of Mr. Carranza is unfeasible since Fort Polk is his current duty station. Thus, this factor does not favor relocation.

*(11)* *Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.*

This factor is not applicable in this case.

*(12)* *Any other factors affecting the best interest of the child.*

In objecting to Ms. Carranza's relocation request, Mr. Carranza alleged that he is concerned about the welfare of the children due to (1) Ms. Carranza's complaints that she is constantly tired and exhausted and (2) because of a March 31, 2018 phone call in which she cried, sounded incoherent, and was unable to complete her sentences. With regard to the first, Ms. Carranza admitted that she is tired at the end of the workday, but just because she has put in a full day's work. She further explained that she was upset during the March 31, 2018 phone call because she was worried about her father's health. She stated that neither of these issues impaired her ability to care for her children. Further, no evidence was elicited as to any actual physical or mental health issue concerning these alleged instances that materially

17

affect the children. Thus, these factors do not require a finding that the relocation to Fort Lewis will not be in the children's best interests.

Based on our *de novo* review, we find that factors one, two, six, seven, eight, and twelve favor allowing relocation; factor ten does not favor relocation; factors three and five favor neither parent; and factors four, nine, and eleven are not applicable to this matter. Thus, we find that a majority of the factors favor allowing the relocation of the children to Fort Lewis. Additionally, we find that although factors three and five favor neither parent, they would lean more in favor of Ms. Carranza due to her domiciliary parent status and because we have already found that her relocation request was made in good faith. Thus, we find that Ms. Carranza has satisfied the best interest element of La.R.S. 9:355.14.

Based on our finding that Ms. Carranza has satisfied both the good faith and the best interest prongs of La.R.S. 9:355.10, we, hereby, reverse the trial court judgment denying her relocation request and render judgment granting her request to relocate the children to Fort Lewis. We further vacate the trial court's judgment as it relates to the change of custody in the event Ms. Carranza transferred to Fort Lewis. Finally, we remand the matter to the trial court for the implementation of a custody plan in accordance with the children's relocation to Fort Lewis.

## DISPOSITION

For the foregoing reasons, the judgment of the trial court denying the relocation request of Andrea C. Carranza is reversed and judgment is rendered in her favor, granting her request to relocate the minor children, Laila and Lilia Carranza, to Fort Lewis, Washington. We further affirm the judgment of the trial court maintaining Ms. Carranza as the domiciliary parent; vacate the judgment as it relates to the change of custody in the event Ms. Carranza transferred to Fort Lewis; and remand the matter to the trial court for the implementation of a custody plan in

accordance with the children's relocation to Fort Lewis. The costs of this appeal are

assessed to the plaintiff, Keith Carranza.

**REVERSED IN PART AND RENDERED; AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**